942 A.2d 870 (2008)
399 N.J. Super. 51
Glenn SELLERS, Appellant,
v.
BOARD OF TRUSTEES OF the POLICE AND FIREMEN'S RETIREMENT SYSTEM, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 2007.
Decided March 19, 2008.
*871 Steven J. Kaflowitz, South Orange, argued the cause for appellant (Law Office of Timothy R. Smith and Associates, L.L.C., attorneys; Pablo N. Blanco, on the brief).
Eileen S. Den Bleyker, Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Den Bleyker, on the brief).
Before Judges COBURN, GRALL and CHAMBERS.
The opinion of the court was delivered by
CHAMBERS, J.A.D.
Glenn Sellers appeals from the Final Administrative Determination of the Board of Trustees (Board) of New Jersey Police and Firemen's Retirement System (PFRS) dated October 17, 2006, denying him enrollment in PFRS because his age exceeded thirty-five, the statutory maximum for such enrollment. Sellers had left his previous job and accepted employment as a firefighter with the Township of Bloomfield (the Township). Both Sellers and the Township thought that once Sellers' age was adjusted for his time as a police officer and his years in military service, he would meet the statutory requirements. This belief was mistaken, and enrollment was denied.
Sellers maintains that the Board should exercise its equitable powers and waive the age limitation under the circumstances here as it has done in the past. The Board maintains that it does not have the power to grant a waiver of the age requirement on an equitable basis. Under the circumstances here, we find that the Board does have equitable powers to allow Sellers enrollment *872 in PFRS and remand in order that the Board may consider whether it should do so.

I
On June 1, 2005, the Township permanently appointed Sellers, who was over the age of thirty-five, as a firefighter. He left his position as a dispatcher with Essex County College in order to take this position. He continues to work for the Township as a firefighter pending the outcome of this appeal.
New Jersey statutory law prohibits the appointment of a full-time firefighter whose age exceeds thirty-five years. N.J.S.A. 40A:14-12. Further, all full-time firefighters must be enrolled in PFRS, which requires that a full-time firefighter may not be over the age of thirty-five at the time of enrollment. N.J.S.A. 43:16A-3; N.J.A.C. 17:4-2.2; N.J.A.C. 17:4-2.5. In a civil service municipality, a person's age is calculated from the announced closing date of the civil service examination for the position. N.J.S.A. 40A:14-12; N.J.A.C. 17:4-2.5(b). Sellers' age on April 30, 2003, the closing date of the examination for the firefighter position which he took, was thirty-eight years, one month and twenty-five days; he thereby exceeded the statutory maximum by three years, one month and twenty-five days.
Sellers and the Township believed, however, that under applicable statutory law, his age would be reduced by the seven years and nine months he had previously served as a police officer in the Township of West Orange and by the approximately four years he had spent in military service.
When Sellers' application for enrollment in PFRS initially came before the Board on May 8, 2006, it was approved due to his prior service of more than seven years as a police officer with the Township of West Orange. However, by letter dated May 24, 2006, that approval was withdrawn pending legal review. The application was denied on July 18, 2006, on the basis that Sellers' age, even when reduced by the permitted deductions, still exceeded the statutory maximum. Sellers appealed that decision, arguing that his years as a police officer and his military service warranted an adjustment to his age and in the alternative that the Board should approve his application on equitable grounds. The Board issued its Final Administrative Determination on October 17, 2006, denying Sellers' request to enroll in PFRS. Since the Board determined that no questions of fact were present, it did not refer the matter for an administrative hearing, but, in accordance with N.J.A.C. 17:4-1.7(e), advised appellant that he could appeal to this court.
A review of the statutes indicates that Sellers was not entitled to a reduction based on his service as a police officer; nor did his military service deduction provide him with sufficient time to overcome the maximum age requirement. The statutes do allow police officers to receive a reduction for prior service as a police officer. N.J.S.A. 40A:14-127.1; N.J.A.C. 17:4-2.5(f). No similar provision, however, allows firefighters a reduction from the age requirement for prior service as a police officer. The age reduction provision for veterans, which applies to both police and firefighters, is limited to service during "time of war." N.J.A.C. 17:4-2.5(c)-(e) (recognizing N.J.S.A. 38:23A-1 to -7 as modifying the maximum age requirements for veterans enrolling in PFRS by time served during "time of war," as defined by N.J.S.A. 43:16A-11.7). Sellers' military service during "time of war," as defined by N.J.S.A. 43:16A-11.7, totaled only five months and two days; with this deduction, his age still exceeded the statutory maximum. Because full-time firefighters *873 must be members of PFRS under N.J.S.A. 43:16A-3 and N.J.A.C. 17:4-2.2, Sellers will lose his position if he is unable to enroll in PFRS.
In this appeal, Sellers does not dispute the calculations of his age made by the Board pursuant to the statutes discussed above. He maintains, however, that the Township and he reasonably believed that his age would be reduced pursuant to statutory provisions. Under these circumstances, Sellers maintains that principles of estoppel apply, allowing the Board to exercise equitable discretion to permit him to enroll in PFRS. The Board maintains that it does not have the power to allow enrollment based on an equitable estoppel theory here.

II
A practice has developed whereby the Board has exercised equitable powers to waive the age requirement on a case-by-case basis. This practice was triggered by changes in the law caused by the Federal Age Discrimination in Employment Act (ADEA) which prohibited discrimination in the hiring or discharging of employees based upon age for those who are at least forty years of age. 29 U.S.C.A. §§ 623(a), 631(a). Amendments in 1986 to the ADEA allowed enforcement of maximum hiring ages for law enforcement personnel and firefighters. Age Discrimination in Employment Amendments of 1986, Pub.L. No. 99-592, § 3(a), 100 Stat. 3342 (1986). When those amendments expired on December 31, 1993, the maximum hiring ages for law enforcement and firefighters became unenforceable, and people could be hired for these positions who were older than thirty-five. Att'y Gen. Op. 94-72, page 2 (1994).[1] In 1996, Congress reinstated the age exception in the ADEA for law enforcement personnel and firefighters, retroactive to December 31, 1993. 29 U.S.C.A. § 623(j); Age Discrimination in Employment Amendments of 1996, Pub.L. No. 104-208, § 119(a), (b), 110 Stat. 3009, 3009-23 (1996). As a result, on February 25, 1997, the Attorney General issued an opinion advising that the maximum age requirements and mandatory retirement age provisions were once again enforceable. Att'y Gen. Op. 97-1, page 3 (1997).
During the period from December 31, 1993 to September 30, 1996, when the age restrictions were unenforceable, individuals over the age of thirty-five had been hired. The Attorney General advised that these individuals need not be discharged, writing:
It is the balance of these individuals' interest in their employment against the competing public interest, coupled with the need to read all statutes fairly and reasonably, which compels this conclusion. The courts decline to apply statutes *874 retroactively where to do so would result in depriving individuals of a vested right or would otherwise be manifestly unfair. . . . Here, persons over the age of 35 were lawfully hired between the period December 31, 1993, through September 30, 1996. It would be manifestly unfair to discharge such individuals who relied upon the prior law in accepting employment. In this regard it should be noted that tenure in continued public employment, guaranteed by statute, is a vested right subject to the protection of the United States Constitution. Board of Regents v. Roth, 408 U.S. 564, 576-577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Battaglia v. Union Cty. Welfare Bd., 88 N.J. 48, 438 A.2d 530 (1981), cert. denied, 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982). The New Jersey Civil Service Act, N.J.S.A. 11A:1-1 et seq., protects the right to employment held by civil servants with career service status by insulating them from termination except for good cause disciplinary reasons or a layoff. N.J.S.A. 11A:2-6; N.J.A.C. 4A:2-2.3. Employees appointed to career service titles gain such tenure upon completion of a working test period. N.J.S.A. 11A:4-13(a). Accordingly, those individuals over the age of 35 who were lawfully hired need not be discharged.
[Att'y Gen. Op. 97-1, pages 3-4 (1997).]
The Final Administrative Determination issued in this case explains that confusion developed during the above time period regarding the maximum age requirements, and that, as a result, the Board was advised that it "had the power to grant PFRS membership not withstanding the applicant's maximum hiring age if it is satisfied that the applicant's (employer's) failure to abide in the age limits was not unreasonable and that the particular equities in the applicant's personal situation mitigated against the loss of employment." Until at least 2002, the Board permitted at least nine individuals to enroll in PFRS based on this case-by-case analysis despite the fact they exceeded the maximum age requirement at the time of employment. The Final Administrative Determination points out that with the passage of time, the reasonable reliance argument is more difficult to make and that since 2002, it has been rejected by the Board. However, since then, in unreported decisions, this court has directed the Board to undertake a case-by-case analysis in accordance with its past practices.

III
Sellers maintains that in the interest of justice, morality and common fairness, the Board has the power to apply equitable principles, including equitable estoppel, to allow him to enroll in PFRS because he and his employer relied in good faith on the belief that his service as a police officer could be used to reduce his age. As a consequence, he gave up his employment with Essex County College in order to work as a firefighter for the Township. The Board maintains that it does not have any power to grant equitable relief under these circumstances.
Principles of equitable estoppel do not neatly fit the facts of this case. Equitable estoppel applies in circumstances where "one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04, 117 A.2d 585 (1955).
Equitable estoppel is rarely invoked against a government entity, although it will be applied in "appropriate *875 circumstances unless the application would `prejudice essential governmental functions.'" Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367, 744 A.2d 649 (2000) (quoting Wood v. Borough of Wildwood Crest, 319 N.J.Super. 650, 656, 726 A.2d 310 (App.Div.1999)). Principles of equitable estoppel may be applied to a government entity to "avoid wrong or injury ensuing from reasonable reliance upon such conduct." Skulski v. Nolan, 68 N.J. 179, 198, 343 A.2d 721 (1975) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, supra, 19 N.J. at 504, 117 A.2d 585). This court has stated that "the doctrine of equitable estoppel is applied against a municipality only in very compelling circumstances, where the interests of justice, morality and common fairness dictate that course." Maltese v. Twp. of N. Brunswick, 353 N.J.Super. 226, 244-45, 802 A.2d 529 (App.Div.2002).
When applying principles of equitable estoppel to municipalities, the courts distinguish between actions that are beyond the powers of the municipality, which are ultra vires in the primary sense and void, and those actions that represent an irregular exercise of powers granted by the legislature, which are only ultra vires in the secondary sense and subject to ratification by application of estoppel. Middletown Twp. Policemen's Benevelent Ass'n Local No. 124 v. Twp. of Middletown, supra, 162 N.J. at 368, 744 A.2d 649 (citing Skulski v. Nolan, supra, 68 N.J. at 198, 343 A.2d 721). Here since the Township had the authority to hire a firefighter under N.J.S.A. 40A:14-7, its action was not ultra vires in the primary sense. Rather, the Township erred in hiring Sellers because he failed to meet the age requirements for the position. This action is ultra vires in the secondary sense, and principles of equitable estoppel could be applied to the action of the municipality in hiring Sellers.
Principles of equitable estoppel may also be applied to the Board for its actions. See Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 393 N.J.Super. 524, 535-36, 925 A.2d 1 (App.Div.2007) (applying principles of equitable estoppel against the State where a member of PFRS relied in good faith upon written advice from the Division of Pensions). Thus, principles of equitable estoppel may be applied to actions of the Board as well as to actions of a municipality. The difficulty in applying principles of equitable estoppel in this case is that Sellers is seeking to bind the Board, a State entity, for action taken by a municipality.
More general equitable principles, however, may be at play here. In numerous circumstances, the courts have said that the government must "turn square corners" in its dealings with others, and "comport itself with compunction and integrity." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27, 495 A.2d 1313 (1985). As our Supreme Court has written, "even with respect to public entities, equitable considerations are relevant in evaluating the propriety of conduct taken after substantial reliance by those whose interests are affected by subsequent actions." Skulski v. Nolan, supra, 68 N.J. at 198, 343 A.2d 721.
A case that presents some guidance under the circumstances here is Kyer v. City of East Orange, 315 N.J.Super. 524, 719 A.2d 184 (App.Div.1998). The plaintiff in Kyer, who was originally hired by the City of East Orange as a provisional employee, continued to work for the city for seven years under the mistaken belief that she had become a permanent employee. Id. at 527-28, 719 A.2d 184. However, due to the mishandling by the municipality of her initial paperwork, she never took the *876 competitive civil service examination that was necessary in order to become a permanent employee. Id. at 528-29, 719 A.2d 184. After being discharged on two days notice, plaintiff sued the municipality for wrongful termination, but her claims were dismissed due to her status as a provisional employee. Id. at 525-26, 719 A.2d 184. On appeal, she argued that she was entitled to the job protection accorded a permanent employee. Id. at 526, 719 A.2d 184. We declined to apply principles of equitable estoppel, relying on O'Malley v. Department of Energy, 109 N.J. 309, 537 A.2d 647 (1987), reasoning that to allow a provisional employee to obtain permanent status under an estoppel theory would "subject government employment to opportunities for subterfuge and circumvention." Id. at 532-33, 719 A.2d 184. However, we determined that in light of its broad powers to effectuate the purposes of the civil service system, and to protect employees such as plaintiff from "falling though the cracks," the Department of Personnel could allow plaintiff to take the examination, or it could "choose, under the extraordinary circumstances here, to examine her qualifications and experience and waive the examination." Id. at 533, 719 A.2d 184. Thus, the Department was authorized to remedy the wrong provided it could do so and remain true to the purposes of the civil service law.
In the case at hand, an analysis of the statutory and administrative scheme reveals an overlapping responsibility between municipalities and the Board with respect to allowing individuals to work as firefighters. The statutes clearly empower municipalities to make hiring decisions, and require that the persons hired meet the statutory age criteria. N.J.S.A. 40A:14-7; N.J.S.A. 40A:14-12. However, in order to become a firefighter for a municipality, the firefighter must also be enrolled in PFRS and therefore must meet the PFRS age requirement. N.J.S.A. 43:16A-3; N.J.A.C. 17:4-2.2. The Board determines whether or not that age requirement has been met. See N.J.S.A. 43:16A-13(1) (vesting in the Board the "proper operation" of PFRS). Thus, the Board has the final say as to whether a firefighter hired by a municipality meets the statutory age criteria.
A problem arises in a case, such as this one, where the municipality believes that the age requirement is met and the Board determines, after the employee has been permanently hired, that the age requirement has not been met. The problem is most easily resolved by setting up an administrative process whereby a prospective employee is approved as eligible for enrollment in PFRS before being permanently hired and leaving their prior position to commence working in the PFRS-covered position. The municipality would offer the position and the employee would accept it, conditioned upon a determination by the Board that the employee qualifies for enrollment in PFRS, a determination which should be made before the employee leaves prior employment and commences working for the municipality. Indeed, this approach is consistent with both the statutes and the regulations. See N.J.S.A. 43:16A-3 (imposing enrollment in PFRS as a condition of employment); N.J.A.C. 17:4-2.5(g) (stating that an individual may not be hired if not enrolled in PFRS).[2]
*877 Until such an arrangement is made or the State agency has provided relevant advice to the municipalities that is clear and unambiguous, municipalities will continue to make hiring decisions based upon their understanding of the pension law, which may be the result of reasonable mistake based on past confusion. As this case reveals, while a person's age is a readily ascertainable fact, the application of adjustments depends on numerous statutes which are not always properly understood. Here, the municipality believed that Sellers had sufficient adjustments to meet the age criteria, and indeed, the Board itself, with its expertise in this area, originally approved his enrollment, also believing that he met the age criteria. It was only after further legal review that a determination was made that he did not meet these requirements. Clearly, compliance with the enrollment criteria can be a complex determination. People accepting public employment should be able to do so without hiring lawyers to assure that they qualify for the position. See Kyer v. City of East Orange, supra, 315 N.J.Super. at 534, 719 A.2d 184 (stating that "persons employed by civil service municipalities ought not to have to retain counsel for advice as to their job rights"). People accepting the firefighter positions in good faith should not be putting their careers and the financial well-being of their families in jeopardy by giving up their current jobs and accepting public employment only to find out later that they do not meet the age requirements for the positions, particularly when all of the relevant information was available to the State and municipality before the commencement of employment.
Since the Board has been vested with "the general responsibility for the proper operation of the retirement system," N.J.S.A. 43:16A-13(1), and due to the present arrangement whereby municipal firefighters commence employment before they are deemed eligible for enrollment in PFRS, we find that the Board does have the authority to apply equitable principles to provide a remedy when justice so demands, provided the power is used rarely and sparingly, and does no harm to the overall pension scheme. In doing so in this case, the Board must carefully balance the relevant public and private interests. It should look at the equities from Sellers' point of view, considering whether the government failed to "turn square corners" with him, whether he acted in good faith and reasonably, the degree of harm he will sustain if the age requirement is strictly enforced, and other factors that go to the fairness of applying the age restriction to him after he was hired and left a previous job to take the position. The Board must then consider the purposes of the age restrictions from the perspective of the municipal firefighter position and the pension system and determine whether or to what extent those purposes will be thwarted if relief is provided to Mr. Sellers, taking into account the extent to which he fails to meet the age criteria and the overall pension scheme. We remand in order for the Board to make these findings and to determine whether the facts warrant application of equitable principles here.
Reversed and remanded.
NOTES
[1] After the ADEA was first enacted, the New Jersey Attorney General issued an opinion on July 11, 1984, advising that the maximum hiring ages for law enforcement officers and firefighters set forth in the State statutes were unenforceable and that the mandatory retirement ages prior to age seventy were also generally unenforceable. Att'y Gen. Op. 84-1, page 287 (1984). In 1986, Congress enacted amendments to the ADEA allowing states to impose maximum hiring ages and mandatory retirement ages for law enforcement personnel and firefighters. Age Discrimination in Employment Amendments of 1986, Pub.L. No. 99-592, § 3(a), 100 Stat. 3342 (1986). As a result, the Attorney General's Office advised that the State's maximum hiring ages and mandatory retirement ages for law enforcement personnel and firefighters were enforceable. Att'y Gen. Op. 87-12, page 1 (1987). When these federal amendments automatically expired on December 31, 1993, the maximum hiring age and the mandatory retirement age once again became unenforceable as noted above. Age Discrimination in Employment Amendments of 1986 § 3(b); Att'y Gen. Op. 94-72, page 2 (1994).
[2] At oral argument, a suggestion was made that the municipality and prospective employee seek a ruling from the Division of Pensions or the Board if they have a question on whether the age criteria is met. The regulations do not provide for such a process, and more importantly, problems are most likely to arise when both parties believe that they understand the rules and proceed without realizing a question needs to be resolved.