**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3618-18T3

GRACE MCMAHON,

    Petitioner-Appellant,

V.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,[1]

    Respondent-Respondent.

Submitted December 9, 2020 – Decided January 14, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury, TPAF No. 1-10-103802.

Grace McMahon, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney

---

[1] Improperly pled as Department of the Treasury, Division of Pension and Benefits.

General, of counsel; Juliana C. DeAngelis, Deputy
Attorney General, on the brief).

PER CURIAM

Grace McMahon appeals pro se from an April 5, 2019 final agency decision of the Board of Trustees (Board) of the Teachers' Pension and Annuity Fund (TPAF), denying her application for a refund of payments made toward the outstanding balance on her pension loan. McMahon contends she paid the loan in full; she alternatively argues "the alleged outstanding loan is a time-barred debt." We affirm.

The procedural history and facts of this matter are fully set forth in the Board's cogent final decision. We therefore summarize only the key facts and events, which are largely undisputed.

McMahon enrolled in TPAF in September 1973 after she was hired as a teacher by the Elizabeth Board of Education (EBOE). Five months before she retired in March 1992, McMahon applied to the Department of the Treasury, Division of Pensions and Benefits (Division) for a TPAF pension loan. On November 13, 1991, the Division issued McMahon a check for $6260. The loan was amortized over thirty payroll deductions for a total loan amount of $6,689.70, which sum included four-percent interest. Monthly payroll deductions of $222.99 commenced on December 1, 1991 and terminated on

March 31, 1992. McMahon retired on March 20, 1992 and deferred receipt of her pension until October 2003, when she would reach age sixty.

In response to McMahon's inquiry for loan payoff information, on March 30, 1992, the Division notified McMahon that she had an outstanding balance of $5,093.11, provided payment was made by May 14, 1992. Notably, the Division stated that amount was "based on the assumption that all of [McMahon's] payments during the last few months ha[d] been made as scheduled." The Division further advised: "The effective date of this lump sum payment will be 06-01-92."

Following receipt of McMahon's $5,093.11 payment on May 14, 1992, the Division issued a "Certification of Payroll Deductions" to the EBOE stating: "MEMBER HAS SATISFIED THEIR [SIC] TOTAL LOAN OBLIGATION IN FULL. PLEASE DISCONTINUE LOAN DEDUCTIONS ON THE EFFECTIVE DATE OF 06-01-1992." McMahon retired in March 1992 and was removed from payroll at the end of that month. As a result, the loan payments for April and May 1992 were not made through payroll deductions, resulting in a $698.69 balance due.

In August 2017, the Division notified McMahon that its post-retirement audit revealed "an outstanding loan balance of $698.69 as of [her] retirement

date." Further, "[l]oan payments were anticipated for April through May 1992 when [McMahon was] quoted with the loan payoff figure" and, as such, the "remaining loan balance was never paid and interest on this balance ha[d] accrued through [her] retirement date." The Division further informed McMahon that monthly deductions of $279.04 would be made from her pension check beginning September 1, 2017 "to satisfy the loan balance plus interest accrued," which totaled $1,220.47.

On October 2, 2017, McMahon appealed the Division's decision to the Board, seeking reimbursement of those deductions already made and to prevent further deductions. Among other things, McMahon argued the Division had advised that the loan was satisfied. Alternatively, McMahon contended she could not be held responsible for the outstanding balance because the statute of limitations for civil actions barred recoupment of the unpaid loan balance.

McMahon unexpectedly attended the Board's January 11, 2018 meeting and addressed the Board, but her appeal was held in abeyance pending the Division's "finalization of discussions with the [IRS]."[2] The Board denied her

_____

[2] Sometime prior to July 2016, the Division conducted an audit of the State's pension systems, including the TPAF. Among other errors, the Division identified multiple loans, including McMahon's, which were not paid within five years of issuance, thereby jeopardizing the status of five pension funds,

request at its December 6, 2018 meeting and issued a written decision on December 21, 2018.[3]

The Board's initial written decision accurately detailed the procedural posture of the matter and McMahon's legal and equitable arguments. According to the Board, the Division never was notified of McMahon's March 20, 1992 retirement date and, as such, the Division "did not realize at the time that scheduled loan deductions from [her] paycheck for April and May 1992 were not submitted to the Division." The Board noted the Division's calculation of her loan payoff amount "assumed [McMahon's] loan payments [we]re made as scheduled . . . ." Because McMahon missed the April 1992 and May 1992

---

including the TPAF, as qualified governmental plans under the Internal Revenue Code. See 26 U.S.C. § 72(p)(2)(B). Under the Code, such unpaid loans are deemed distributions, which are taxable as income to the funds' members. 26 U.S.C. § 72(p)(1). Following the audit, the Division and the Internal Revenue Service executed an agreement, detailing the Division's voluntary compliance program in exchange for amnesty regarding 336 "loan failures in 2014, 2015 and 2016," totaling $1,648,941.96. The State provided the agreement in its appendix on appeal. Although the Board apprised McMahon about the substance of the agreement, it is unclear from the record whether the Board provided the agreement to McMahon during the pendency of her appeal before the agency.

[3] The Board issued a corrected decision on January 8, 2019, which was limited to one statutory citation.

payments, the quoted amount of $5,093.11 was erroneous, resulting in the unpaid balance.

Citing N.J.S.A. 18A:66-35 to -35.1 and -63 of the Teachers' Pension and Annuity Fund Law (TPAF Law), the Board concluded it was authorized to deduct from McMahon's pension payments any unpaid balance with interest. As the Board correctly recognized, the statute expressly "provides for the corrections of errors." Enacted in 1967, N.J.S.A. 18A:66-63 states:

> If any change or error in records results in a member or beneficiary receiving from the retirement system more or less than [s]he would have been entitled to receive had the records been correct, then on discovery of the error, the board of trustees shall correct it and, so far as practicable, adjust the payments in such a manner that the actuarial equivalent of the benefit to which [s]he was correctly entitled shall be paid.

Additionally, the Board

> relie[d] on the fact that the TPAF is a tax-qualified plan in accordance with the Internal Revenue Code [(IRC)], which requires that pension loans comply with [IRC] section 72(p). Failure of the TPAF to comply with [that] section . . . could result in plan disqualification, meaning the TPAF could lose its tax-qualified status. The Board is also aware that the [Division] entered into an [a]greement with the Internal Revenue Service [(IRS)] to correct errors in the loan program that could have disqualified the TPAF, and as part of that [a]greement, the TPAF Board must enforce [IRC] section 72(p).

The Board also rejected McMahon's argument that the statute of limitations for civil claims barred the Board's recoupment of the loan and dismissed her demand for various fees incurred for challenging the Board's decision. Those fees included faxing and copying costs and travel expenses for attending the Board meeting. Citing our decision in Sellers v. Board of Trustees, Police & Firemen's Retirement System, 399 N.J. Super. 51 (App. Div. 2008), the Board determined it could not grant McMahon amnesty on equitable grounds because doing so would harm the overall pension scheme. Id. at 62-63.

McMahon appealed the Board's determination, primarily challenging the Board's determination that the Division was never notified of her retirement date; the Division tacitly considered her loan paid for more than twenty-five years; and her alleged debt is barred by the ten-year statute of limitations for "any civil action commenced by the State . . . ." See N.J.S.A. 2A:14-1.2. Concluding no material facts were in dispute, the Board prepared findings of fact and conclusions of law which were approved at its March 7, 2019 meeting.

On April 5, 2019, the Board issued its final administrative decision, denying McMahon's appeal. Finding it was constrained by "the laws governing the TPAF," the Board addressed McMahon's contentions, methodically setting

forth its factual findings, the procedural posture of the case, and well-reasoned legal conclusions.

Among other things, the Board referenced the Division's "Closing Agreement with the IRS that identifie[d] problems with pensions loans and a method to correct the identified errors, while maintaining the tax-qualified status of the TPAF." Citing the governing statutes, the Board reiterated its authority to deduct any unpaid loan balance and interest on that unpaid balance from McMahon's pension payments. See N.J.S.A. 18A:66-35 to -35.1 and 66-63. Further, the Board again noted the TPAF is subject to IRS regulations, which require that loans be repaid within five years of issuance or otherwise are deemed a distribution. Notably, the Board observed: "The deemed distribution does not cancel the loan obligation, which still must be repaid to the [TPAF], with applicable interest."

Applying the law to the McMahon's case, the Board concluded:

> There is no dispute that [McMahon] took a loan from [her] TPAF account, on November 13, 1991, that [she] started repaying the loan through payroll deductions, and repayment ceased when [she] requested a loan pay[]off from the Division. There is further no dispute that when the Division provided [McMahon] with a loan payoff, the notification stated that the payoff was based on [her] loan payments being current and "[t]he effective date of this lump sum payment will be June 1, 1992." There is no dispute that [McMahon]

went off payroll at the end of March 1992 and therefore did not make payments for April and May 1992. While the Division did not carry these loan payments in retirement, [McMahon] also did not notify the Division that [she] went off payroll prior to the June 1, 1992 payoff date for [her] loan. The TPAF Board acknowledge[d] that [McMahon's] remaining loan payments were not carried into retirement and automatically deducted from [her] pension checks by the Division. When the Division realized [McMahon's] loan was not being repaid, [she was] informed by the Division of the outstanding loan obligation, and thereafter the Division implemented a modified repayment schedule to repay [her] loan.

The Board further observed "the issue of the repayment of loans in retirement implicates more than just [McMahon's] loan." Recognizing "the TPAF is a federally tax-qualified plan" under N.J.S.A. 43:3C-18(a), the TPAF's failure to comply with IRC requirements, such as repayment within five years under 26 U.S.C. § 72(p), could jeopardize that qualification. Accordingly, the Board again rejected McMahon's "request to waive the amount of accrued interest charged on [her] loan because doing so could harm the overall pension scheme." This appeal followed.

On appeal, McMahon raises the following points[4] for our consideration:

> I. [McMahon] has a contract with [the TPAF].
> ([Not] Raised Below)

---

[4] McMahon's point headings fail to state "the place in the record where the opinion or ruling is located . . . ." See R. 2:6-2(a)(6).

A-3618-18T3

II.   [McMahon] is suing the State of New Jersey for negligence under [the Tort Claims Act,] N.J.S.A. 59:1-1 [to 12-3].
([Not] Raised Below)

III.   [The TPAF] erred in denying [McMahon]'s appeal by refusing to acknowledge [her] proof of pension loan repayment.

IV.   [The TPAF] erred in relying on N.J.S.A. 18A:66-63 to correct errors.

V.   [The TPAF] erred in stating that [McMahon] did not notify the [The TPAF] that she went off payroll prior to June 1, 1992.

VI.   [The TPAF] breached the terms of the pension loan contract.
([Not] Raised Below)

VII.   [The TPAF] has incorrectly characterized its actions in this matter by claiming that the basis for their actions is factually predicated upon IRS mandates rather than upon the alleged debt collection activity which prompted the deductions from the [TPAF]'s retirement checks.

VIII.   [TPAF] has placed an undue burden upon [McMahon] to defend against this claim.

As a preliminary matter, the issues McMahon now raises in points I, II and VI, were not raised before the TPAF or the Board.  Accordingly, we decline to consider those arguments on this appeal.  See In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008); see also Zaman v. Felton,

219 N.J. 199, 226-27 (2014); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2021).

We have considered McMahon's remaining contentions in light of the record and applicable legal principles, and conclude they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). Pursuant to our deferential standard of review, In re Stallworth, 208 N.J. 182, 194 (2011), we affirm substantially for the reasons expressed in the Board's cogent written decision, which "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D), and is not arbitrary or capricious or inconsistent with legislative policy, see Brady v. Bd. of Review, 152 N.J. 197, 210-11 (1997). We add only the following brief remarks.

On appeal, the Board does "no[t] dispute that the Division erred when it failed to transfer McMahon's outstanding loan balance into her retirement account." It is likewise undisputed that the Division failed to discover the missed payments until twenty-five years after McMahon issued a lump sum payment of $5,093.11 in – what she contends was – satisfaction of the loan. Accordingly, we recognize there is nothing in the record to establish that McMahon acted in bad faith.

Nonetheless, McMahon was required to repay the outstanding loan balance. See N.J.S.A. 18A:66-35.1. And the Board was statutorily mandated to correct the Division's error. See N.J.S.A. 18A:66-63. Notably, the TPAF statute does not contain a limitations period. Cf. N.J.S.A. 54:51A-7 (limiting the tax court's power to correct clerical errors "upon the filing of a complaint at any time during the tax year or within the next [three] tax years thereafter").

Moreover, as we recognized more than fifty years ago:

> The pension statute is carefully drawn to protect the integrity of the public and contributed funds from which pensions are paid. Administrative errors by officials in respect of such funds, which are a public trust, cannot on the theory of estoppel be permitted to aggrandize the specific statutory rights of qualified pensioners into illegal depletions of such funds for their private benefit.
>
> Tubridy v. Consol. Police & Firemen's Pension Fund Comm'n., 84 N.J. Super. 257, 263 (App. Div. 1964).

We are therefore compelled to affirm the Board's decision, which is consistent with the governing law and the public policy that is aimed at protecting "the overall pension scheme."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3618-18T3