# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5567-18

M.A.,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

> Argued February 1, 2021 – Decided May 10, 2021
>
> Before Judges Currier, Gooden Brown and DeAlmeida.
>
> On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-52958.
>
> Lori A. Dvorak argued the cause for appellant (Dvorak & Associates, LLC, attorneys; Jeffrey S. Ziegelheim and Lori A. Dvorak, of counsel and on the briefs).
>
> Robert S. Garrison, Jr., Director of Legal Affairs, argued the cause for respondent (Police and Firemen's Retirement System of New Jersey Legal Affairs, attorneys; Robert S. Garrison, Jr., on the brief).

PER CURIAM

Petitioner M.A.[1] appeals from the July 9, 2019 final agency decision of the Board of Trustees of the Police and Firemen's Retirement System (Board) denying him service credit for the six-year period he was on paid administrative leave awaiting resolution of disciplinary charges. We affirm.

I.

The following facts are derived from the record. M.A. began his employment as a municipal police officer on January 1, 1988. From January 2004 to March 2007, M.A., who had been diagnosed with depressive disorder and anxiety, was involved in a series of off-duty psychological incidents, some of which required he be restrained by police officers. In 2007, M.A. was involuntarily committed to a hospital for psychiatric evaluation and treatment.

On March 17, 2007, the internal affairs division of M.A.'s employer determined he was unfit for duty and unable to carry a weapon. While a fitness for duty evaluation was undertaken by Dr. William B. Head, Jr., a psychiatrist, M.A. was assigned to the Police Court and Confinement Unit (PCCU), a position that does not include full police powers or require the use of a firearm.

---

[1]  We refer to petitioner by his initials to protect the privacy of court records related to his civil commitment. R. 1:38-3(f)(2).

On May 29, 2007, Dr. Head opined in a written report that he could not clear M.A. to carry a weapon and recommended that he leave the police force. On June 8, 2007, Dr. Head wrote a supplemental report opining that "[p]ending the processing of his retirement documentation, [M.A.] can work in a position that does not involve the use of a weapon." A subsequent report by the internal affairs division concluded:

> [w]ith all of the aforementioned incidents involving psychological problems, stressors and medication, Dr. Head has determined that [M.A.] can no longer carry a firearm. Since [M.A.] can no longer carry a firearm he can no longer be a Police Officer. [M.A.] will be pensioned off the Department.

On June 20, 2007, before the employer filed an involuntary disability retirement application, M.A. was suspended without pay for the alleged sexual assault of an inmate on June 9, 2007, and June 10, 2007. Pursuant to his collective bargaining agreement, on July 19, 2007, M.A. was placed on paid suspension because the allegations had not yet been resolved. M.A. never again reported for work and while on paid suspension continued to accumulate service credit in his retirement account.

On February 5, 2008, M.A. was indicted by a grand jury, which charged him with two counts of second-degree sexual assault, four counts of fourth-degree sexual contact, and two counts of second-degree official misconduct for

3

the sexual assault of the inmate. He remained on paid suspension while the criminal charges were pending. In June 2010, M.A. was acquitted of the criminal charges.

M.A. subsequently advised his employer he wished to return to work. On July 29, 2010, however, M.A. received a preliminary notice of disciplinary action (PNDA) related to the events that resulted in the criminal charges. The PNDA alleged several disciplinary violations for giving food and cigarettes to an inmate in exchange for sex acts. M.A. remained on paid suspension while the disciplinary charges were pending. After two days of hearings on the disciplinary charges, on February 10, 2016, M.A. and his employer executed a settlement agreement in which the disciplinary charges were dropped in exchange for M.A.'s immediate retirement.

On May 13, 2016, M.A. applied for a special retirement, effective June 1, 2016. Special retirement, which may be granted after twenty-five years of creditable service, provides pension benefits of at least sixty-five percent of final compensation. N.J.S.A. 43:16A-11.1(a) and (b). M.A. claimed twenty-eight years and five months of creditable service.

On September 12, 2016, the Board approved M.A.'s special retirement effective June 1, 2016. At the time, the Board had been informed by M.A.'s

employer that no disciplinary charges were pending against him. Two weeks later, on September 26, 2016, the Board notified M.A. that based on information received from its fraud unit, his retirement application had been referred to the Board for review.

On March 27, 2017, the Board issued a written decision concluding M.A. is not entitled to creditable service for the period of July 1, 2010, the first of the month after he was acquitted of the criminal charges, to June 1, 2016, the date of his retirement. The Board concluded that M.A. was placed in the PCCU pending the filing of an involuntary retirement application but that the application was not filed, likely because of the criminal charges lodged against him. The Board found that had M.A. or his employer filed a retirement application, it would not have processed the application until resolution of the criminal charges. See N.J.A.C. 17:1-6.2(c) (precluding the processing of a retirement application while criminal charges are pending against an employee).

The Board also determined that once M.A. was acquitted of the criminal charges, it would have processed a retirement application, although neither M.A. nor his employer sought his retirement. The Board found that M.A.'s employer failed to follow its internal procedure to seek the retirement of any officer who has not performed the duties of his office for a year or more due to a medical

condition and M.A. failed to make a meaningful effort to return to work by securing a fitness for duty determination that would permit him to possess a firearm. Finally, the Board referenced N.J.S.A. 43:16A-1 and -4, which define "creditable service" as "service as a policeman or fireman paid for by an employer, which was rendered by a member . . . ." The Board determined that

> [u]nder the circumstances of this case, where [M.A.] remained in full pay status for over [eight] years while not working, not qualified to carry a weapon, without training, and without attempts to return to work, combined with the admission from the [employer] that their own procedures regarding sickness and retirement were not followed, likely due to the criminal charges, the Board concludes that the payments to [M.A.] for over [eight] years is not in line with the intent of the regulation [sic] and makes [M.A.] eligible for retirement benefits to which he would not otherwise be entitled. Providing [M.A.] with a service retirement effective July 1, 2010 is consistent with the statutory and regulatory intent along with the employer's policy.

With this reduction in service credits, the Board determined M.A. was eligible for a service retirement based on twenty-two years and five months of service and the return of his pension contributions from July 1, 2010 to June 30, 2016. As opposed to the enhanced benefit M.A. would have received in a special retirement, his service retirement benefit is approximately fifty percent of final compensation. N.J.S.A. 43:16A-5(1) and (2).

A-5567-18

M.A. appealed the Board's decision. The Board transferred the matter to the Office of Administrative Law (OAL) for a hearing. On April 16, 2019, after two days of testimony, Administrative Law Judge (ALJ) Betancourt issued an initial decision finding M.A. should be credited with service for the period July 1, 2010 to June 30, 2016. The ALJ concluded that the Board's denial of service credits was based on the false premise that M.A. did not make an effort to return to work after his acquittal on the criminal charges. The ALJ found that M.A. attempted to return to work by informing the chief of police of his desire to return to work. In addition, the ALJ found that M.A. asked for resolution of the disciplinary charges, but faced delays by his employer and was never officially charged with being unfit for duty, negating any reason for him to seek an evaluation of his fitness for duty.

On July 9, 2019, the Board issued a final decision reversing the ALJ's initial decision and reinstating the denial of service credits. The Board reasoned that

> [f]rom July 19, 2007 onward, [M.A.] received a full salary without performing any work for [his employer]. The failure of [M.A.] and [his employer] to act cannot operate to grant him an additional six years in the [pension system] that he is not entitled to receive. [M.A.] cannot be awarded additional years of service credit while he did nothing to earn that credit.

7

This appeal followed. M.A. argues that the Board's decision is arbitrary, capricious, against the weight of the evidence, and contrary to law.

II.

Our review of decisions by administrative agencies is limited, with petitioners carrying a substantial burden of persuasion. In re Stallworth, 208 N.J. 182, 194 (2011). An agency's determination must be sustained "'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result . . . .'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

While we are not bound by an agency's interpretation of legal issues, which we review de novo, Russo, 206 N.J. at 27, "[w]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting St. Peter's Univ. Hosp.

8

v. Lacy, 185 N.J. 1, 13 (2005)). "Such deference has been specifically extended to state agencies that administer pension statutes." Ibid.

We have carefully reviewed the record in light of the relevant legal precedents and find support for the Board's decision in the statutes defining "[c]reditable service," N.J.S.A. 43:16A-1(8) and N.J.S.A. 43:16A-4(a); and "[p]oliceman," N.J.S.A. 43:16A-1(2)(a). It was reasonable for the Board to conclude that these statutes, when read together, do not allow creditable service for the period that M.A. was collecting his salary, but unable to perform the duties of a police officer, while disciplinary charges were pending against him. Even though the disciplinary charges ultimately were dismissed through a settlement agreement, M.A. was unable, during his suspension, to perform the duties of a police officer due to his mental condition, which was unrelated to the disciplinary charges. The Board's denial of service credits in these circumstances is a reasonable application of the statutes.

As noted above, N.J.S.A. 43:16A-1(8) defines "[c]reditable service" as "service rendered for which credit is allowed as provided under [N.J.S.A. 43:16A-4]." N.J.S.A. 43:16A-4(a) provides that "[o]nly service as a policeman . . . paid for by an employer, which was rendered by a member . . . shall be

considered as creditable service for the purposes of this act." N.J.S.A. 43:16A-

1(2)(a) provides:

> "[p]oliceman" shall mean a permanent, full-time employee of a law enforcement unit . . . whose primary duties include the investigation, apprehension or detention of persons suspected or convicted of violating the criminal laws of the State and who:
>
> (i)      is authorized to carry a firearm while engaged in the actual performance of his official duties;
>
> (ii)     has police powers;
>
> (iii)    is required to complete successfully the training requirements prescribed by [N.J.S.A. 52:17B-66, et seq.] or comparable training requirements as determined by the board of trustees; and
>
> (iv)    is subject to the physical and mental fitness requirements applicable to the position of municipal police officer established by an agency authorized to establish these requirements on a Statewide basis, or comparable physical or mental fitness requirements as determined by the board of trustees.

There is ample support in the record for the Board's determination that starting in March 2007, M.A.: (1) was prohibited from carrying a firearm; (2) was deemed mentally unfit to carry out the duties of a police officer; and (3) did not have full police powers. The record also establishes that once M.A. was suspended he did not have primary duties that included investigation, apprehension or detention of persons suspected or convicted of violating the

10

criminal laws of this State. For more than nine years, M.A. could not, and did not, perform the duties of a police officer. In fact, after June 20, 2007, M.A. never again reported to work.

While the record arguably supports denial of service credits for the entire period that M.A. was suspended, the Board determined that it would be inequitable to deny service credits for the time the criminal charges were pending. In support of this position, the Board, relying on N.J.A.C. 17:1-6.2(c), concluded it would not have processed an involuntary retirement application, had one been filed, while criminal charges were pending against M.A.

M.A. does not challenge this equitable consideration, but argues that the Board should apply the same approach to the period during which the disciplinary charges were pending. He does not, however, cite to a regulation precluding the processing of a retirement application when disciplinary charges are pending against the applicant. N.J.A.C. 17:1-6.2, on which M.A. relies, applies when "a member is subject to criminal charges, such as an indictment, information or accusation or dismissed from public employment due to administrative charges . . . ." In those instances, "[n]o claims for retirement or death benefits can be processed until the matter has been fully adjudicated and completely resolved to the satisfaction of the Board or Trustees, pursuant to

A-5567-18

N.J.A.C. 17:1-1.13(a)(4)." N.J.A.C. 17:1-6.2(c). N.J.A.C. 17:1-1.13(a)(4) applies only to the suspension of retirement benefits where "a retirant is receiving retirement benefits" when an administrative or disciplinary action is filed. The plain text of the regulation applies in the disciplinary context only when an employee: (1) applies for retirement after having been dismissed; or (2) is already receiving retirement benefits and is subject to a disciplinary charge. Those circumstances are not present here.

Having been presented with no legal authority to the contrary, we accept the Board's representation that it would have processed a retirement application had one been filed by or on behalf of M.A. while the disciplinary charges were pending against him. In light of this understanding, we see no error in the manner in which the Board exercised its equitable powers in the unusual circumstances surrounding M.A.'s retirement. Sellers v. Bd. of Trs., Police & Firemen's Ret. Sys., 399 N.J. Super. 51, 62-63 (App. Div. 2008).

To the extent we have not specifically addressed any of M.A.'s remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).[2]

---

[2] The Board's brief states that the inmate who accused M.A. of sexual assault filed a civil suit against M.A.'s employer which settled for a "substantial

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

amount" and urges the court to consider those facts when reviewing the Board's decision. The brief, however, contains no citations to the appendix or transcripts to support these factual assertions. See R. 2:6-2(a)(5) (requiring appellant's brief to contain "[a] concise statement of the facts material to the issues on appeal supported by references to the appendix and transcript.") and R. 2:6-4(a) (requiring respondent's brief to conform with Rule 2:6-2(a)). We see no reference in the decisions of the ALJ or the Board to the civil suit or its settlement, nor any reference to documents evidencing the civil suit or its settlement in the statement of items comprising the record on appeal. See R. 2:5-4(b). We will disregard the Board's references to the civil action and its settlement, as we do not consider evidence that is not part of the agency record, Townsend v. Pierre, 221 N.J. 36, 45 n.2 (2015), and caution the Board's counsel against references to facts not in the record in the future. As an aside, we note that the pendency of a civil action, had it been established before the agency, may have raised questions with respect to the consistency of the Board's treatment of M.A.'s periods of suspension. N.J.A.C. 17:1-6.2(d) provides that "in cases where anything pertaining to a member's employment is in litigation, or under appeal, the matter shall be held in abeyance until the Division determines if the claims can be processed or whether the processing of such claims are to be postponed pending a final resolution of the litigation or appeal." It appears that had M.A. or his employer filed an application for retirement benefits while a civil suit relating to the alleged sexual assault was pending, the Board, as was the case when the criminal charges were pending, may have withheld processing of the application.

A-5567-18