**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3595-18

BARBARA ZILBERBERG,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

     Respondent-Respondent.

_____

> Argued May 5, 2021 – Decided June 22, 2021
>
> Before Judges Fuentes, Whipple and Firko.
>
> On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of Treasury.
>
> Stephen B. Hunter argued the cause for appellant (Detzky Hunter & Defillippo, LLC, attorneys; Stephen B. Hunter, of counsel and on the brief).
>
> Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Juliana C. DeAngelis, on the brief).

PER CURIAM

Barbara Zilberberg appeals from a March 11, 2019 final administrative determination of the Board of Trustees (Board) of the Teachers' Pension and Annuity Fund (TPAF), rejecting her request to waive a portion of interest payment owed on her pension loan. We affirm.

In 2004, Zilberberg, a former school psychologist, applied for a pension loan from TPAF and received $26,860 on March 31, 2004. TPAF is a tax-qualified governmental plan under the Internal Revenue Code (IRC), which regulates how members may borrow and repay money from TPAF. Pension loans through TPAF are repaid by active employees through payroll deductions, or by retirees through pension check deductions; IRC and statutory requirements for repayment maintain TPAF's tax-qualified status. Zilberberg's loan repayment schedule planned for forty-nine deduction payments of $607.22 each, totaling $29,753.78, which included the calculated interest rate of 4% per year.

The Division of Pensions and Benefits (Division) administers the public pension system, Burgos v. State, 222 N.J. 175, 184 (2015), which includes TPAF, N.J.S.A. 18A:66-1 to -93. Ibid. The pension plans guarantee participants certain benefits paid upon retirement and are based on the participant's salary and time spent contributing to the pension system. Id. at 184-85. "The benefits

are paid using revenues received from employee contributions, public employer ([such as] State) contributions, and investment returns." Id. at 185.

Zilberberg retired July 1, 2004, three months after she received her initial loan payout. As of her retirement date, Zilberberg had made two of the forty-nine loan payments via payroll deduction; the outstanding principal balance after the two payments was then $25,973.83. Due to a mistake in billing, Zilberberg's retirement payments were not deducted from her pension checks past June 30, 2004. In other words, the Division did not deduct Zilberberg's loan payments once she had retired. Zilberberg did not inquire about her loan repayment status between 2004 and 2017.

In September 2017, the Division sent a letter to Zilberberg, notifying her that an audit of pension loans had revealed the balance due. As a result of not making loan payments or having them deducted from her pension checks, Zilberberg still owed the outstanding balance of $25,973.83. However, Zilberberg owed additional accrued interest of $21,227, for a total of $47,200.83 when combined with the loan principal. The Division informed Zilberberg in the September 2017 letter that it would begin deducting loan payments from her monthly retirement allowance to cover the repayment of principal and interest.

A-3595-18

Zilberberg contacted the Division after receiving the letter. She contended the Division was not entitled to the additional accrued interest because of its failure to recover the balance from her due to its improper billing. Later, she offered to repay the remaining balance and five years of interest, at 4%, in a lump sum payment if the Board would waive the interest accrued after the original five-year term. The Board rejected her offer on November 1, 2018.

On January 14, 2019, Zilberberg appealed the Board's decision and requested that the matter be transferred to the Office of Administrative Law. In February, the Board determined that there were no material facts in dispute and directed the Board Secretary to prepare and issue a final administrative determination. On March 11, 2020, the Board issued its decision denying Zilberberg's request to waive the accrued interest assessed on her outstanding loan obligation. The decision noted that the State had entered into a closing agreement with the Internal Revenue Service (IRS) under which outstanding pension loans, plus interest, would be repaid to State-administered retirement systems, including TPAF, to protect their tax-qualified status.[1]

---

[1] On March 2, 2018, the State and the Commissioner of the IRS entered into a closing agreement that required TPAF to repay outstanding pension loans, including interest, to comply with statutory requirements and to maintain the pension plans' tax-qualified status.

This appeal followed.

I.

We "have 'a limited role' in the review of [administrative agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A] 'strong presumption of reasonableness attaches to the actions of the administrative agencies.'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "In order to reverse an agency's judgment, an appellate court must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (alteration in original) (quoting Henry, 81 N.J. at 579).

To evaluate whether the Board's decision to deny Zilberberg's request for a waiver of accrued interest – which Zilberberg states was based on the Board's own inaction – was arbitrary, capricious, and unreasonable, we first examine the decision in line with Stallworth, 208 N.J. at 194. Initially, we assess whether the agency followed the law, or rather:

> [W]hether the record contains substantial evidence to support the findings on which the agency based its action; and [] whether in applying the legislative policies to the facts, the agency clearly erred in

5

> reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

Here, the Division informed Zilberberg that the loan disbursement would need to be repaid with interest for the duration of the loan. The I.R.C., § 72(p), N.J.S.A. 18A:66-35, N.J.S.A. 18A:66-35.1, and N.J.S.A. 18A:66-63 controlled the interest obligation, even though it was the Division's fault the payments were not deducted from Zilberberg's pension checks.

Under the IRC when a pension loan is not repaid within five years of its distribution, the loan funds are essentially converted to taxable income as a "deemed distribution." I.R.C. § 72(p)(2)(B) sets forth an exception from a taxable deemed distribution for a loan from a qualified employer plan, provided the loan is repaid within five years. I.R.C. § 72(p)(1) ("If during any taxable year a participant or beneficiary receives, directly or indirectly, any amount as a loan from a qualified employer plan, such amount shall be treated as having been received by such individual as a distribution under such plan."). In its closing agreement with TPAF, the IRS repeats the requirements of I.R.C. § 72(p)(1). The agreement references that there were loan participants who did not make any repayments to the loan since separation from employment.

Although Zilberberg did not provide her loan agreement for our review, the provisions of I.R.C. § 72(p)(1) were in effect before Zilberberg's loan disbursement, and TPAF has a statutory duty to collect interest on distributions.

Repayment of interest to TPAF is crucial to maintain the pension plan's tax-qualified status. If Zilberberg were to fail to pay the interest associated with the loan, the pension system and its members could face challenges to their status. In its November 13, 2018 letter to Zilberberg, the Board explained that "all loans are subject to . . . I.R.C. [§] 72(p)." The letter also states that "[f]ailure of the TPAF to comply with [I.R.C. §] 72(p) could result in plan disqualification, meaning the TPAF could lose its tax-qualified status."

TPAF further explains that Zilberberg must repay the loan obligation with applicable interest, citing IRS Revenue Procedure 2016-51, § 6.02(1). This provision sets out the process for correcting failure to follow pension plan rules – in this case, repayment within five years:

> (1) Restoration of benefits. The correction method should restore the plan to the position it would have been in had the failure not occurred, including restoration of current and former participants and beneficiaries to the benefits and rights they would have had if the failure had not occurred.
>
> [IRS Rev. Proc. 2016-51, § 6.02(1).]

7

N.J.S.A. 18A:66-35 details the statutory requirement for members' repayment to the retirement system:

> Any member who has at least [three] years of service to his credit for which he has contributed as a member may borrow from the retirement system, an amount equal to not more than 50% of the amount of his accumulated deductions, but not less than $50; provided, that the amount so borrowed, together with interest thereon, can be repaid by additional deductions from compensation, not in excess of 25% of the member's compensation, made at the same time compensation is paid to the member. The amount so borrowed, together with interest on any unpaid balance thereof, shall be repaid to the retirement system in equal installments by deduction from the compensation of the member at the time the compensation is paid or in such lump sum amount to repay the balance of the loan but such installment shall be at least equal to the member's rate of contribution to the retirement system and at least sufficient to repay the amount borrowed with interest thereon. Not more than two loans may be granted to any member in any calendar year. Notwithstanding any other law affecting the salary or compensation of any person or persons to whom this article applies or shall apply, the additional deductions required to repay the loan shall be made.
>
> The rate of interest for a loan requested by a member . . . shall be 4% per annum on any unpaid balance thereof. For a loan requested after the effective date of that act, the rate of interest per annum shall be a commercially reasonable rate as required by the [IRC] to be determined by the State Treasurer on that effective date, and on January 1 of each calendar year thereafter. An administrative fee in an amount set by the State Treasurer for each calendar year may be charged for

any loan requested after the effective date . . . . Loans shall be made to a member from his accumulated deductions. The interest earned on such loans shall be treated in the same manner as interest earned from investments of the retirement system.

[N.J.S.A. 18A:66-35 (emphasis added).]

N.J.S.A. 18A:66-35.1 states, in pertinent part, that:

In the case of any member who retires without paying the full amount so borrowed, the Division shall deduct from the retirement benefit payments the same monthly amount which was deducted from the compensation of the member immediately preceding retirement until the balance of the amount borrowed together with the interest is repaid.

Notably, N.J.S.A. 18A:66-63 is especially applicable here:

If any change or error in records results in a member or beneficiary receiving from the retirement system more or less than he would have been entitled to receive had the records been correct, then on discovery of the error, the board of trustees shall correct it and, so far as practicable, adjust the payments in such a manner that the actuarial equivalent of the benefit to which he was correctly entitled shall be paid.

[N.J.S.A. 18A:66-63 (emphasis added).]

Zilberberg seeks relief under the "so far as practicable" clause in N.J.S.A. 18A:66-63, arguing it is not practicable to adjust her payments upward. However, compliance with IRC and IRS requirements is most practicable here, and the Board's decision was not arbitrary, capricious, or unreasonable. The

9

Board's decision comported with the IRS requirement that TPAF collect a sum sufficient to repay the amount borrowed with interest thereon. IRS Rev. Proc. 2016-51, § 6.02(1). Zilberberg's unpaid loan installments militated adjustment by statute. N.J.S.A. 18A:66-63. Zilberberg received more from the retirement system than she was entitled to receive, and she is not permitted to benefit from the Board's billing mistake. The statutes are clear that the Board must correct its error and adjust Zilberberg's deductions to include the interest that will maintain TPAF's tax-qualified status.

## II.

Zilberberg's remaining arguments lack merit. Zilberberg argues that the Board's deduction of the principal and balance from her pension payments is barred by N.J.S.A. 2A:14-1, which addresses the statute of limitations for actions in breach of contract. However, since the Board has not taken an action at law against Zilberberg, no statute of limitations is implicated here. Zilberberg further argues that the doctrine of laches applies to this case, foreclosing the Board from collecting the loan amount plus interest because the Board sat "on its rights for thirteen years."

The doctrine of laches applies when there is neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do

what in law should have been done.  More specifically, it is inexcusable delay in asserting a right.  Lavin v. Bd. of Educ. of the City of Hackensack, 90 N.J. 145, 151 (1982) (quoting Hall v. Otterson, 52 N.J. Eq. 522, 535 (Ch. 1894)).  We see no reason to apply the doctrine of laches here.  The Board fulfilled its statutory duty to adjust Zilberberg's pension payments so it would be able to recoup the loan payments plus interest.  See N.J.S.A. 18A:66-35; IRS Rev. Proc. 2016-51, § 6.02(1).  There was no civil collections action against Zilberberg, so no equitable claim can be asserted against the Board to bar such an action.

Last, Zilberberg refers us to Sellers v. Board of Trustees of the Police and Firemen's Retirement System, 399 N.J. Super. 51 (App. Div. 2008), to support her argument that an equitable remedy is warranted.  In Sellers, we recognized that the Board has "the authority to apply equitable principals to provide a remedy when justice so demands, provided the power is used rarely and sparingly, and does no harm to the overall pension scheme."  Id. at 62 (emphasis added).  Zilberberg's circumstances do not reach that standard.  Rather, she has benefited from an interest-free loan for thirteen years, and the Board must take steps to ensure that her failure to pay interest does not harm the pension scheme.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-3595-18