SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## Susan Seago v. Board of Trustees, Teachers' Pension and Annuity Fund
### (A-9-23) (087786)

**Argued January 29, 2024 -- Decided May 22, 2024**

**FASCIALE, J., writing for a unanimous Court.**

The Court considers whether, under the circumstances presented, the Board of Trustees of the Teachers' Pension and Annuity Fund (TPAF Board) acted arbitrarily, capriciously, or unreasonably when it denied petitioner Susan Seago's application for an interfund transfer from her expired Public Employees' Retirement System (PERS) account to her active Teachers' Pension and Annuity Fund (TPAF) account.

The Edison Township Board of Education (Edison BOE) hired Seago as a paraprofessional in 2004, and she became a member of PERS that same year. At the beginning of the 2017-2018 school year, Seago resigned from her position as a paraprofessional and became employed as a teacher by the Edison BOE. By that time, her PERS account had reached "Tier 1" membership status and had vested.

On July 6, 2017, Seago filled out an "Application for Interfund Transfer" to transfer her PERS credits and contributions to her new TPAF account. According to the printed instructions on the application, Seago and the Edison BOE were required to complete different portions of the application. Seago completed and signed her section and sent the application to the Edison BOE. Although the Edison BOE enrolled Seago as a TPAF member in September 2017, it did not complete its portion of Seago's interfund transfer application at that time.

In early March 2019, the Department of the Treasury, Division of Pensions and Benefits (Division) notified Seago that she had not contributed to her PERS account since June 30, 2017. Seago spoke with representatives of the Edison BOE's human resources department, who assured her that all she needed to do to effectuate her interfund transfer request was to complete "the top portion" of the application, as she had already done. On June 30, 2019, Seago's membership in PERS ceased pursuant to N.J.S.A. 43:15A-7(e). At that time, and unbeknownst to Seago, the Edison BOE had still not completed its portion of Seago's interfund transfer application.

1

On August 31, 2020, the Edison BOE realized that it failed to send Seago's interfund transfer application to the Division on time. The Edison BOE attempted to rectify the situation by completing its portion of the application and submitting it to the Division that same day. Along with the application, the Edison BOE sent a letter admitting its mistake. The Division informed Seago and the Edison BOE that, despite the Edison BOE's conceded error, Seago's application for interfund transfer could not be processed because her PERS account had expired.

The Edison BOE challenged the denial of Seago's interfund transfer application. The TPAF Board again denied the interfund transfer request, and the Appellate Division affirmed. The Court granted certification. 255 N.J. 411 (2023).

**HELD:** The TPAF Board acted arbitrarily, capriciously, and unreasonably when it denied Seago's interfund transfer application. Under the unique facts of this case, equity requires that the TPAF Board grant Seago's interfund transfer application. Seago's reasonable and good-faith attempts to ensure that her interfund transfer application was timely filed, coupled with the absence of apparent harm to the pension fund, necessitate this outcome.

1. PERS and TPAF are two distinct retirement systems operated by the State. Membership in PERS "shall cease if [the member] shall discontinue [their] service for more than two consecutive years." N.J.S.A. 43:15A-7(e) (emphasis added). PERS contributions and credits may, however, be transferred to a different State-operated retirement system, including TPAF, which expressly requires that membership in the former system has not expired or been withdrawn. N.J.A.C. 17:3-7.1(b). To effectuate such a transfer, as relevant here, "[a] member . . . must file an 'Application for Interfund Transfer,'" N.J.A.C. 17:3-7.1(b)(1), "no more than two years from the date of the last contribution in the PERS," N.J.A.C. 17:3-7.1(b)(5)(ii). Regarding interfund transfers, the Division's Teachers' Pension and Annuity Fund (TPAF) Member Guidebook states in part that "an Application for Interfund Transfer should be submitted by your employer to the [Division]." Notably, the ability to transfer service credit and contributions from one retirement system to another may directly impact a member's retirement benefits, including by maintaining tier status. (pp. 13-16)

2. Generally, equitable principles are rarely applied against governmental entities. Under the appropriate circumstances, however, equitable estoppel may apply unless its application would prejudice essential governmental functions. As the TPAF Board has conceded in this appeal, it has "the authority to apply equitable principles to provide a remedy when justice so demands, provided the power is used rarely and sparingly, and does no harm to the overall pension scheme." See Sellers v. Bd. of Trs., PFRS, 399 N.J. Super. 51, 62 (App. Div. 2008). This is particularly true where providing an equitable remedy would require the TPAF Board only to relax its own

2

regulation, not a statute duly enacted by the Legislature. Courts consider several factors, as outlined by the Appellate Division in Sellers, when determining whether to apply equitable principles in the "interests of justice" to circumstances presented by a member of a retirement system: "whether the government failed to 'turn square corners'"; whether the pension member "acted in good faith and reasonably"; the harm a member will suffer; the harm to the pension scheme; and any other relevant factors in the interest of fairness. See id. at 62-63. The Court explains the considerations that underly those factors. (pp. 17-21)

3. Here, it is evident that the TPAF Board did not "turn square corners" when considering Seago's interfund transfer application in light of the reasons provided for the delayed submission. The TPAF Board did not reasonably and adequately consider the Edison BOE's admitted responsibility and how the Guidebook, application, and regulations led to the late filing of Seago's interfund transfer application, through no fault of Seago's. In addition, Seago acted in good faith and took reasonable steps to attempt to ensure that her interfund transfer application was filed. Seago completed her portion of the application timely and reasonably believed, based on reassurances by her employer coupled with the instructions in the Guidebook and on the application itself, that it was the Edison BOE's responsibility to complete and submit her application. Moreover, Seago would suffer significant harm from the denial of her interfund transfer application: she will be unable to transfer her PERS "Tier 1" membership status, which means she will have to wait 5 additional years to retire and will ultimately receive a lower monthly pension allowance. The record is devoid of evidence that the fund would face significant harm if Seago's application is treated as timely. Cases like Seago's only occur two to three times per year, and the Court's holding here is a narrow one that applies specifically to Seago's unique circumstances. (pp. 21-25)

4. The Court stresses that it does not hold that it is the employer's responsibility to file an interfund transfer application on a member's behalf, or that a member will be entitled to an interfund transfer in every case in which a former employer fails to timely complete an interfund transfer application on the member's behalf. Rather, under the specific circumstances of this case, the Court concludes that as a matter of equity the TPAF Board must grant Seago's interfund transfer application as if it were timely filed. (p. 25)

        **REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-9 September Term 2023
087786

Susan Seago,

Petitioner-Appellant,

v.

Board of Trustees, Teachers'
Pension and Annuity Fund,

Respondent-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| January 29, 2024 | May 22, 2024 |

Kathleen Naprstek Cerisano argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Kathleen Naprstek Cerisano, of counsel and on the brief, and Amory Blank, on the brief).

Joseph A. Palumbo, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel, and Robert E. Kelly, Deputy Attorney General, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

1

In this appeal from a final administrative determination, we must decide whether under the circumstances presented, the Board of Trustees of the Teachers' Pension and Annuity Fund (TPAF Board) acted arbitrarily, capriciously, or unreasonably when it denied petitioner Susan Seago's application for an interfund transfer from her expired Public Employees' Retirement System (PERS) account to her active Teachers' Pension and Annuity Fund (TPAF) account.

Pursuant to N.J.A.C. 17:3-7.1(b), a TPAF member seeking to effectuate an interfund transfer from a former PERS account must file an "Application for Interfund Transfer" before the member's PERS account expires, which occurs two years from the date of the member's last contribution.

Seago was a paraprofessional and PERS member for almost thirteen years until she became employed as a teacher, at which time she was enrolled in TPAF. Seago's last contribution to her PERS account was on June 30, 2017. Although she completed her portion of the interfund transfer application on July 6, 2017 -- well before the expiration of her PERS account -- her employer admittedly "overlooked" her application and failed to timely complete and file it. Despite assuring Seago that her only responsibility to successfully effectuate an interfund transfer was to complete the "top portion" of the interfund transfer application -- which she did -- Seago's employer did

2

not realize it failed to submit Seago's application until after Seago's PERS account had expired. Consequently, the TPAF Board denied Seago's interfund transfer application as out of time. She appealed, and the Appellate Division upheld the TPAF Board's determination.

We hold that the TPAF Board acted arbitrarily, capriciously, and unreasonably when it denied Seago's interfund transfer application. Under the unique facts of this case, we conclude that equity requires that the TPAF Board grant Seago's interfund transfer application. Seago's reasonable and good-faith attempts to ensure that her interfund transfer application was timely filed, coupled with the absence of apparent harm to the pension fund, necessitate this outcome. We therefore reverse the Appellate Division's judgment and direct the TPAF Board to grant Seago's interfund transfer application as if it were timely filed.

I.

A.

We derive the following facts from the parties' submissions and information provided to us at oral argument because Seago was denied a hearing in the Office of Administrative Law (OAL). Importantly, the TPAF Board has maintained that it does not dispute and has assumed the truth of Seago's allegations.

3

The Edison Township Board of Education (Edison BOE) hired Seago as a paraprofessional in 2004. As a result of this public employment, Seago became a member of PERS that same year. Seago continued her role as a paraprofessional and contributed to her PERS account until 2017. At the beginning of the 2017-2018 school year, Seago resigned from her position as a paraprofessional and became employed as a teacher by the Edison BOE. Even though Seago's employer did not change, the change in position required that Seago become a member of TPAF and that her pension contributions be made to TPAF. Thus, Seago's last contribution to her PERS account was on June 30, 2017. By that time, her PERS account had acquired 152 months of credit and had reached "Tier 1" membership status.[1] Moreover, Seago had a total of $20,086.49 in pension contributions, and her account had vested.[2]

---

[1] "Tier" membership status is not specifically addressed in the PERS or TPAF statutory scheme. Rather, as identified by the TPAF Board, it is language used by the Department of the Treasury, Division of Pensions and Benefits (Division), for ease of reference and exists in both the PERS and TPAF member guidebooks provided by the Division. However, a member's "tier" status is based on provisions in both the PERS and TPAF statutory schemes which establish rules for retirement tethered to a member's date of enrollment. See, e.g., N.J.S.A. 43:15A-47 to -48 (examples of statutory provisions supporting the "tier" designations under PERS); N.J.S.A. 18A:66-43 to -44 (examples of statutory provisions supporting the "tier" designations under TPAF).

[2] Pursuant to N.J.S.A. 43:15A-38, a PERS member's account vests after the member has completed ten years of service. If a PERS account is vested, the member may be eligible for deferred retirement.

On July 6, 2017, Seago filled out an "Application for Interfund Transfer" to transfer her PERS credits and contributions to her new TPAF account. According to the printed instructions on the application, Seago and the Edison BOE were required to complete different portions of the application. Seago completed and signed her section of the application, "the top portion," and subsequently sent the application to the Edison BOE. Although the Edison BOE enrolled Seago as a TPAF member in September 2017, it did not complete its portion of Seago's interfund transfer application -- the portion to be completed by the member's "former" employer -- at that time.

In early March 2019, the Department of the Treasury, Division of Pensions and Benefits (Division) notified Seago by letter that she had not contributed to her PERS account since June 30, 2017. That letter did not explicitly state that Seago's PERS account was set to expire in June 2019, two years after her last contribution. It did, however, provide the date of her last contribution, stated that she was still a PERS member, and explained that she was eligible to apply for retirement benefits. Seago did not respond to the letter. Instead, Seago spoke with representatives of the Edison BOE's human resources department who assured her that all she needed to do to effectuate her interfund transfer request was to complete "the top portion" of the

5

application, as she had already done.  At oral argument, Seago's counsel detailed how the Edison BOE informed Seago that it did in fact timely file her interfund transfer application, despite the fact that it had not done so.  Counsel for the TPAF Board did not challenge that assertion.

On June 30, 2019, Seago's membership in PERS ceased pursuant to N.J.S.A. 43:15A-7(e).  At that time, and unbeknownst to Seago, the Edison BOE had still not completed its portion of Seago's interfund transfer application.  Consequently, Seago's opportunity to apply for an interfund transfer lapsed under N.J.A.C. 17:3-7.1(b), which provides that a TPAF member is only eligible to transfer membership if the former membership "has not expired."

Thereafter, on September 17, 2019, the Division notified Seago of her options for the pension contributions she made to her PERS account:  apply for withdrawal of a lump sum of her contributions; apply for a rollover of contributions to an Individual Retirement Account or an employer's retirement plan; or apply for the monthly retirement allowance.

On August 31, 2020, the Edison BOE realized that it failed to send Seago's interfund transfer application to the Division on time because, according to the Edison BOE, it "missed out/overlooked" Seago's application.  The Edison BOE attempted to rectify the situation by completing the "former

employing agency" portion of the application and submitting it to the Division that same day in August 2020 -- over three years after Seago completed her section of the application and over a year after Seago's PERS account expired.

Along with Seago's application, the Edison BOE sent the Division a letter admitting its mistake. That August 2020 letter, authored by the Edison BOE's payroll supervisor and business administrator, stated that

> [Seago] had filled out an Interfund Transfer form on July 6th, 2017. I see that her form was missed out/overlooked by Payroll Dept. and not sent to NJ Pensions.

> Please accept this as a letter of request for Interfund Transfer from PERS to TPAF. This oversight was not [Seago's] fault. Can we please restore her enrollment date and process this form for her[?]

The Division received Seago's application for interfund transfer from the Edison BOE on September 10, 2020. Later that month, the Division informed Seago and the Edison BOE that, despite the Edison BOE's conceded error, Seago's application for interfund transfer could not be processed because her PERS account expired on June 30, 2019.

B.

In October 2020, the Edison BOE challenged the Division's denial of Seago's interfund transfer application in a letter, reiterating that the delay was due to the Edison BOE's own mistake. The Edison BOE explained:

7

We are fully aware of the expiration of [Seago's] PERS credit; however, we as the employer had not submitted her interfund transfer form in 2017 when she filled out her portion of the form.

. . . . We [are] not sure which of [the Edison BOE's employees] was responsible for the completion of interfund transfer applications; however, one of them never submitted Ms. Seago's application. When our current Payroll Supervisor . . . discovered the error, she immediately completed the form and submitted it. Unfortunately, it was after Ms. Seago's PERS 2-year grace period expired.

. . . .

We are also aware of the fact that Ms. Seago had received several notices that her PERS grace period was about to expire; but she claims that she was told by our Human Resources Department, that when she became a teacher, she didn't have to do anything to transfer her time, except to fill out the top portion of the interfund transfer form. We do not doubt that she was told this, because at the time, this was all she needed to do.

Following a TPAF Board meeting in December 2020, the TPAF Board affirmed the Division's determination and denied Seago's interfund transfer request, concluding initially that it "ha[d] no authority to grant Ms. Seago's request in accordance with N.J.S.A. 43:15A-7(e) and N.J.A.C. 17:3-7.1." Seago appealed the TPAF Board's denial and requested a hearing in the OAL. The TPAF Board summarily denied the request for a hearing because, according to the TPAF Board, there were "no factual issues to be adduced."

8

In its final administrative determination, the TPAF Board again denied Seago's interfund transfer request, reasoning that "the statutes and relevant case law governing TPAF," including N.J.S.A. 43:15A-7(e) and N.J.A.C. 17:3-7.1, "do not permit the Board to grant" such a request. The TPAF Board emphasized that interfund transfers are not mandatory, but rather are optional at the member's request. Thus, the TPAF Board concluded that "if an employee chooses to exercise the option, the responsibility to timely file the required application lies with the member, not the employer."

C.

Seago appealed the TPAF Board's final administrative determination to the Appellate Division. The Appellate Division affirmed the decision, maintaining that N.J.A.C. 17:3-7.1(b)(5)(ii) provides that it is the member's responsibility to fill out and file the interfund transfer application within two years from the date of the last contribution. The appellate court rejected Seago's argument that the TPAF Member Guidebook says otherwise, reasoning that the "TPAF Member Guidebook does not supersede the language of an unambiguous statute" and that Seago was therefore the one responsible for filing and submitting her application, not the Edison BOE. Moreover, the Appellate Division declined to find that applying N.J.A.C. 17:3-7.1(b)'s two-year limitation to Seago's circumstances was inequitable.

9

We granted Seago's petition for certification.  255 N.J. 411 (2023).

II.

Seago asks us to reverse the Appellate Division's judgment and argues that the TPAF Board acted arbitrarily, capriciously, and unreasonably when it denied her interfund transfer application.  She emphasizes that the relevant pension statutes are to be construed liberally and that this Court should not employ an "overly stringent interpretation" of those statutes, especially considering her "significant public service."  Seago further argues that she acted with "diligence and good faith," and reasonably relied on her employer's representations concerning the status of her interfund transfer application.  Seago cites to the TPAF Member Guidebook, which places the burden on the employer to submit interfund transfer applications.  Lastly, Seago contends that this Court should weigh the financial implications of her being unable to transfer her credits and losing her "Tier 1" membership status against the prejudice to the pension fund, which, according to Seago, is minimal compared to the financial impact on her.

The TPAF Board argues that this Court should defer to its reasonable determination concerning Seago's application.  It contends that a liberal construction of the relevant pension statutes "does not enlarge the rights provided by statute" and that the Legislature provided "clear directives" that

10

apply to Seago's circumstances, making her ineligible to complete an interfund transfer of her PERS contributions and service credit.

The TPAF Board further argues that Seago did not act with reasonable diligence and that "[i]t was her own failure to ensure that her application for interfund transfer was filed" that resulted in her ineligibility to transfer her account now. In support, the TPAF Board emphasizes that the Division sent Seago notices informing her that she still had an active PERS account and that Seago should have contacted the Division directly to obtain more information upon receiving those notices. Because she failed to do so, the TPAF Board argues that this Court should reject Seago's equitable arguments. At oral argument, the TPAF Board conceded that it did in fact have the authority to grant Seago equitable relief but maintained that Seago's circumstances did not warrant such relief.

## III.

## A.

"Judicial review of [an] agency determination[] is limited." Allstars Auto Grp., Inc. v. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). An agency's final "decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Russo v. Bd. of Trs., PFRS, 206 N.J. 14, 27 (2011)).

11

But, in cases involving statutory interpretation or pure legal issues, "a reviewing court is 'in no way bound by [an] agency's interpretation of'" that statute or legal issue. Id. at 158 (alteration in original) (quoting DYFS v. T.B., 207 N.J. 294, 302 (2011)).

B.

Pension statutes for public employees, like PERS and TPAF, "serve a public purpose" and are designed to encourage individuals "to enter and remain in public employment, and to render faithful and efficient service while so employed." Geller v. Dep't of Treasury, 53 N.J. 591, 597 (1969). And because pension statutes are "remedial in character," ibid., they are to "be liberally construed and administered in favor of the persons intended to be benefited thereby," Minsavage v. Bd. of Trs., TPAF, 240 N.J. 103, 107 (2019) (quoting Steinmann v. Dep't of Treasury, 116 N.J. 564, 572 (1989)). We are therefore hesitant to allow "[f]orfeiture of earned pension rights" -- "a drastic penalty" -- "unless that penalty has been clearly mandated by the Legislature." Bueno v. Bd. of Trs., TPAF, 422 N.J. Super. 227, 242 (App. Div. 2011) (alteration in original) (quoting Fiola v. Dep't of Treasury, 193 N.J. Super. 340, 347-48 (App. Div. 1984)).

IV.

PERS and TPAF are two distinct retirement systems operated by the State. N.J.S.A. 43:15A-1 to -161 govern PERS. PERS provides a pension fund for the payment of retirement benefits to public employees who are not members of any other retirement system supported by the State. N.J.S.A 43:15A-7. In contrast, N.J.S.A. 18A:66-1 to -93 govern TPAF, which provides retirement benefits specifically to teachers. N.J.S.A. 18A:66-4; see also N.J.S.A. 18A:66-2(p) (defining "teacher" for the purposes of TPAF). Thus, despite being public employees, teachers are members of TPAF and not PERS. See N.J.S.A. 18A:66-4; N.J.S.A 43:15A-7. Paraprofessionals who accept "employment in the service of the State" are members of PERS and not TPAF. See N.J.S.A. 43:15A-7.

Membership in PERS "shall cease if [the member] shall discontinue [their] service for more than two consecutive years." N.J.S.A. 43:15A-7(e) (emphasis added). PERS contributions and credits may, however, be transferred to a different State-operated retirement system. PERS members may transfer their service credit and contributions from their PERS account to TPAF upon enrollment in TPAF, pursuant to N.J.S.A. 18A:66-15.1(c):

> A member who is a member of [PERS] . . . at the time of enrollment in [TPAF] and who within three years of the date of that enrollment ceases to be an active contributing member of [PERS] may transfer all service

13

> credit in [PERS] to [TPAF] upon application and transfer of the member's contributions from [PERS] to [TPAF].
>
> [(emphasis added).]

However, an interfund transfer does not occur automatically. Administrative regulations provide guidance to TPAF members regarding how to successfully complete an interfund transfer. See N.J.A.C. 17:3-1 to -7 (regulations governing TPAF). According to N.J.A.C. 17:3-7.1(b), a TPAF member is generally "eligible to transfer membership from another State-administered defined benefit retirement system, provided the membership has not expired or has not been withdrawn and provided that all service eligible for participation has ceased." (emphasis added). To effectuate such a transfer, which includes transferring service credit and contributions, "[a] member . . . must file an 'Application for Interfund Transfer.'" N.J.A.C. 17:3-7.1(b)(1) (emphases added). And the "Application for Interfund Transfer" from PERS to TPAF must occur "no more than two years from the date of the last contribution in the PERS, or the member's PERS account has not expired due to the provisions of N.J.S.A. 43:15A-8." N.J.A.C. 17:3-7.1(b)(5)(ii).

The Division has also made available to TPAF members a TPAF "Member Guidebook" designed to provide "a summary description of the benefits of the plan" and to "outline[] the rules and regulations governing the

14

plan." N.J. Div. of Pension & Benefits, Teachers' Pension and Annuity Fund (TPAF) Member Guidebook 4 (July 2021). The Guidebook's foreword includes a caveat that "if there is a conflict with statutes governing the plan or regulations implementing the statutes, the statutes and regulations will take precedence" over the Guidebook. Ibid. Regarding interfund transfers, the Guidebook states:

> If you are eligible and interested in transferring your membership account, an online Enrollment Application for the new retirement system and an Application for Interfund Transfer should be submitted by your employer to the [Division]. Applications must be received within [thirty] days of the date you meet the eligibility requirements of the new retirement system.
>
> [Id. at 11 (emphasis added).[3]]

Notably, the ability to transfer service credit and contributions from one retirement system to another may directly impact a member's retirement benefits. For instance, and pertinent to this appeal, N.J.S.A. 43:15A-47(a)

---

[3] Seago specifically relies on this section of the Guidebook in support of her arguments. However, the Appellate Division determined that this section of the Guidebook did not apply to Seago's circumstances because it governs transfers from TPAF to PERS, not PERS to TPAF. Although this section of the Guidebook generally covers transfers from TPAF to other State-administered retirement systems, including PERS, the Guidebook specifically notes within the first paragraph of that same section that interfund transfers can be made from TPAF to different State-administered retirement systems and "vice versa." TPAF Member Guidebook at 11.

15

provides that a PERS member who joined prior to November 2008 may retire and receive benefits at age 60. The Division designates members who fall within this category as having "Tier 1" or "Tier 2" membership status. In contrast, "Tier 5" membership status encompasses individuals who became PERS members after June 28, 2011 -- those individuals are only eligible to receive retirement benefits at age 65. N.J.S.A. 43:15A-47(c). Further, PERS members who have "Tier 5" membership status are entitled to a lower monthly pension allowance as compared to "Tier 1" members. See N.J.S.A. 43:15A-48.

TPAF mirrors those provisions and "tier" statuses. See N.J.S.A. 18A:66-43, -44; see also TPAF Member Guidebook at 25. And importantly, when a member successfully completes an interfund transfer, the member may retain their "tier" status from the former retirement system to the new retirement system. See N.J.A.C. 17:3-7.1(b)(4) ("The member's service credits and enrollment date established in the former system shall be transferred into the new membership account." (emphasis added)).

## V.

## A.

To determine whether the TPAF Board acted arbitrarily, capriciously, or unreasonably when it denied Seago's request for an interfund transfer, we view

16

the unique facts of this case from the lens of equity. Generally, equitable principles are rarely applied against governmental entities. See Middletown Twp. Policemen's Benevolent Ass'n Loc. No. 124 v. Township of Middletown, 162 N.J. 361, 367 (2000) ("Equitable estoppel is 'rarely invoked against a governmental entity.'" (quoting Wood v. Borough of Wildwood Crest, 319 N.J. Super. 650, 656 (App. Div. 1999))). However, as to the principle of equitable estoppel, we have held that it "may be invoked" against a governmental entity "where interests of justice, morality and common fairness clearly dictate that course." Ibid. (quoting Gruber v. Mayor & Twp. Comm. of Raritan, 39 N.J. 1, 13 (1962)).

Thus, under "the appropriate circumstances," equitable estoppel may apply unless its application "would 'prejudice essential governmental functions.'" Ibid. (quoting Wood, 319 N.J. Super. at 656); see also Skulski v. Nolan, 68 N.J. 179, 198 (1975) ("[E]quitable considerations are relevant in evaluating the propriety of conduct taken after substantial reliance by those whose interests are affected by subsequent actions . . . [in order] 'to avoid wrong or injury ensuing from reasonable reliance upon such conduct.'" (citation omitted) (quoting Summer Cottagers' Ass'n v. Cape May, 19 N.J. 493, 504 (1955))).

17

B.

In considering Seago's circumstances and the applicability of equitable principles, we find that Sellers v. Board of Trustees, PFRS, 399 N.J. Super. 51 (App. Div. 2008), provides well-reasoned guidance.

In Sellers, the plaintiff appealed a final determination by the Board of Trustees of the New Jersey Police and Firemen's Retirement System (PFRS) denying his PFRS enrollment on the ground that he had exceeded the statutory maximum age for enrollment, which consequently rendered him unable to pursue employment as a firefighter. 399 N.J. Super. at 52-53, 55. In deciding to leave his former employment to pursue a firefighter position, both the plaintiff and the township employer that had offered him the position operated under the mistaken belief that the plaintiff's age would be "adjusted" to reflect his time as a police officer and years of military service under applicable statutory law, such that he would satisfy the qualifying firefighter age requirements. Id. at 53-54. The plaintiff argued that equitable principles should be applied to his circumstances because both he and the township employer reasonably believed his age would be statutorily adjusted, which consequently would have allowed the plaintiff to enroll in PFRS. Id. at 55. The Appellate Division agreed with the plaintiff's position and held that the

18

PFRS Board should have considered equitable principles in the plaintiff's case. Id. at 62-63.

We hold that the equitable principles outlined in Sellers apply to the circumstances presented in this appeal. As the TPAF Board has conceded in this appeal, it has "the authority to apply equitable principles to provide a remedy when justice so demands, provided the power is used rarely and sparingly, and does no harm to the overall pension scheme." Id. at 62. This is particularly true where providing an equitable remedy would require the TPAF Board only to relax its own regulation, not a statute duly enacted by the Legislature. See, e.g., Minsavage, 240 N.J. at 106, 108-09 (holding that "a retirement application, whether approved or not, may be reopened and modified upon a showing of good cause, reasonable grounds, and reasonable diligence," despite relevant regulations to the contrary (citing N.J.A.C. 17:3-6.1(f)(5) and N.J.A.C. 17:3-6.3(a))).

We consider several factors, as outlined by the Appellate Division in Sellers, when determining whether to apply equitable principles in the "interests of justice" to circumstances presented by a member of a retirement system: "whether the government failed to 'turn square corners'"; whether the pension member "acted in good faith and reasonably"; the harm a member will

suffer; the harm to the pension scheme; and any other relevant factors in the interest of fairness.  See id. at 62-63.

First, when considering whether the government failed to "turn square corners," this Court has emphasized how "governmental officials act solely in the public interest" and that the government's "primary obligation is to comport itself with compunction and integrity."  F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27 (1985).

Next, it is important to consider whether the member acted in good faith, "exercised reasonable diligence," and seeks relief "for good cause upon reasonable grounds."  Minsavage, 240 N.J. at 110.  In Minsavage, we determined that the petitioner, a beneficiary of her deceased husband's retirement benefits, could modify the retirement selection that her husband previously made, provided "good cause, reasonable grounds, and reasonable diligence are shown."  Id. at 105, 107.  Thus, we remanded to provide the petitioner with an opportunity to make such a showing.  Id. at 105.

We also consider the harm to the member, specifically the "degree of harm" to the member if relevant statutes or regulations are to be "strictly enforced," and the harm to the pension fund.  Sellers, 399 N.J. Super. at 62.  As we emphasized above, pension statutes should be "administered in favor of the persons intended to be benefited," Minsavage, 240 N.J. at 107 (quoting

Steinmann, 116 N.J. at 572), but "'[a] potential adverse impact on the financial integrity' of the pension fund . . . may counsel against too broad an application of a pension statute in favor of a petitioner," Francois v. Bd. of Trs., PERS, 415 N.J. Super. 335, 349 (App. Div. 2010) (quoting Chaleff v. Bd. of Trs., TPAF, 188 N.J. Super. 194, 197 (App. Div. 1983)).

For example, in Smith v. Department of Treasury, the Appellate Division rejected the plaintiff's interpretation of a PERS-related statute, in part because that interpretation would have expanded "the class of persons eligible for . . . significantly greater" pension benefits and would therefore have placed "a greater strain on the financial integrity of the fund . . . and its future availability for those persons who are truly eligible for such benefits." 390 N.J. Super. 209, 215 (App. Div. 2007). Thus, "the fiscal integrity of the pension funds" is another consideration when determining whether a member should be granted equitable relief. Francois, 415 N.J. Super. at 349 (quoting DiMaria v. Bd. of Trs., PERS, 225 N.J. Super. 341, 354 (App. Div. 1988)).

## VI.

Considering those equitable principles and the specific circumstances of this appeal, we hold that the TPAF Board acted arbitrarily, capriciously, and unreasonably when it denied Seago's interfund transfer application. As a

21

result, we direct the TPAF Board to accept Seago's interfund transfer application as if it were timely filed.

It is evident that the TPAF Board did not "turn square corners" when considering Seago's interfund transfer application in light of the reasons provided for the delayed submission. Although the TPAF Board continues to claim that it was Seago's responsibility under N.J.A.C. 17:3-7.1(b)(1) to submit the interfund transfer application, the TPAF Member Guidebook -- a Guidebook created to help TPAF members understand the retirement system and made available on the Division's official website -- offers contradictory guidance. As the Guidebook indicates, for those "eligible and interested in transferring [a] membership account, an online Enrollment Application for the new retirement system and an Application for Interfund Transfer should be submitted by your employer to the [Division]." TPAF Member Guidebook at 11 (emphasis added).

Notwithstanding the Guidebook's initial disclaimer -- that statutes and regulations take precedence over the Guidebook -- it was unreasonable for the TPAF Board, under Seago's particular circumstances, not to recognize the hardship that this contradiction caused Seago. See Steinmann, 116 N.J. at 576-78 (holding that the plaintiff demonstrated good cause to change her retirement selection because it was the TPAF "Board's regulation, combined with its

22

failure to provide [the plaintiff] with information material to her decision, that prevented [the plaintiff] from selecting" a more favorable retirement option).

Moreover, the interfund transfer application that Seago filled out explicitly provided that the application must be completed by the member <u>and</u> the member's former employer and must be submitted with the new enrollment application for the retirement system into which the member is transferring. Notably, it is the <u>employer</u>'s "statutory responsibility" to enroll employees in TPAF and other State-operated retirement systems. <u>See</u> N.J.A.C. 17:1-3.1; N.J.A.C. 17:3-2.8. Considering its "primary obligation . . . to comport itself with compunction and integrity," <u>F.M.C. Stores Co.</u>, 100 N.J. at 427, the TPAF Board did not reasonably and adequately consider the Edison BOE's admitted responsibility and how the Guidebook, application, and regulations led to the late filing of Seago's interfund transfer application, through no fault of Seago's.

In addition, Seago acted in good faith and took reasonable steps to attempt to ensure that her interfund transfer application was filed. Seago completed her portion of the application on July 6, 2017 -- approximately two years prior to the expiration of her PERS account. And when Seago received information from the Division regarding her PERS account, she turned to her employer who assured her that her only responsibility was to complete her

23

portion of the application. Seago's employer admitted to the TPAF Board numerous times that Seago's late application was due to the Edison BOE's own failure, not Seago's. Based on those reassurances by her employer, coupled with the instructions in the Guidebook and on the application itself, Seago reasonably believed that it was the Edison BOE's responsibility to complete and submit her application. Thus, we conclude Seago acted in good faith, with reasonable due diligence, and took reasonable steps to attempt to ensure that her interfund transfer application was filed.

Moreover, Seago will suffer significant harm if we uphold the TPAF Board's denial of her interfund transfer application: she will be unable to transfer her PERS "Tier 1" membership status, thereby relegating her to "Tier 5" membership status in TPAF. See N.J.A.C. 17:3-7.1(b)(4). And consequently, if Seago remains in "Tier 5" membership status in TPAF, to receive her full TPAF retirement benefits, Seago must wait until she reaches the age of 65 rather than age 60, and she will ultimately receive a lower monthly pension allowance. See N.J.S.A. 18A:66-43 to -44.

The record is devoid of evidence that the fund would face significant harm if Seago's application is treated as timely. As the TPAF Board admitted at oral argument, cases like Seago's only occur two to three times per year. Importantly, our holding is a narrow one that applies specifically to Seago's

unique circumstances; thus, it will not "place a greater strain on the financial integrity of the fund." Cf. Smith, 390 N.J. Super. at 215.

We therefore conclude that, based on the record before us, the harm to the pension system in granting Seago's application does not appear to be significant as compared to the harm Seago will face if we allow the TPAF Board's decision to stand. Considering Seago's circumstances and the applicable equitable principles, it is apparent that the TPAF Board acted unreasonably and that Seago's interfund transfer application must be granted.

To be clear, we do not hold that it is in fact the employer's responsibility to file an interfund transfer application on a member's behalf. Additionally, we do not hold that a member will be entitled to an interfund transfer in every case in which a former employer fails to complete an interfund transfer application on the member's behalf within the time limitations provided in the regulations. Rather, under the specific circumstances presented in this case, we conclude that as a matter of equity the TPAF Board must grant Seago's interfund transfer application as if it were timely filed.

## VII.

Having concluded that the TPAF Board acted arbitrarily, capriciously, and unreasonably under the circumstances presented, we reverse the judgment of the Appellate Division and instruct the TPAF Board to grant Seago's

25

application for an interfund transfer as if her application had initially been timely filed.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.