**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1000-24

SHU ZHANG,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION
AND ANNUITY FUND,

      Respondent-Respondent.

_____

        Argued January 15, 2026 – Decided January 26, 2026

        Before Judges Mawla, Marczyk, and Puglisi.

        On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury, Agency Docket No. TPAF No. xx2674.

        Samuel Wenocur argued the cause for appellant (Oxfeld Cohen, PC, attorneys; Samuel Wenocur, of counsel and on the briefs).

        Payal Y. Ved, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant

Attorney General, of counsel; Payal Y. Ved, on the brief).

PER CURIAM

Appellant Shu Zhang appeals from a November 15, 2024 final agency decision by respondent the Board of Trustees of the Teachers' Pension and Annuity Fund (TPAF), finding her ineligible to purchase pension credits based on her employment with Hillsborough Township Board of Education (Hillsborough) between October 1, 2013 and June 30, 2015. We reverse and remand for the reasons expressed in this opinion.

In 2010, appellant emigrated from China to attend graduate school at Rutgers University on an F-1 student visa. In 2012, she graduated and accepted a full-time teaching position with Hillsborough for the 2012-2013 school year as a Chinese language teacher under a temporary work permit through her F-1 student visa, called optional practice training (OPT).

In December 2012, appellant began the application process for an H-1B visa. A Hillsborough employee completed appellant's paperwork to enable the Department of Homeland Security (DHS) to issue the visa. In April 2013, DHS approved her H-1B visa, effective October 1, 2013, through the end of the 2013-2014 school year. Appellant received the H-1B approval notice from Hillsborough on May 1, 2013.

Hillsborough did not notify appellant during the 2013-2014 school year her change in visa status made her eligible to enroll in Social Security or the Teachers' Pension and Annuity Fund (TPAF). Although she had a Social Security card, she had no knowledge of either the Social Security or TPAF retirement systems.

Appellant applied for a new H-1B visa in the spring of 2014 for the 2014-2015 school year. Again, Hillsborough handled the application paperwork. Appellant's visa was approved, effective July 1, 2014, until June 30, 2017. She obtained the written notice of approval from Hillsborough.

In September 2015, Hillsborough's payroll office notified appellant it had been erroneously recording her visa status as OPT and would update its records to reflect her H-1B status. That month, Hillsborough applied to enroll appellant in the TPAF, effective September 1, 2015. Appellant did not understand why Hillsborough had only then enrolled her in Social Security as neither her immigration nor employment status had changed. Due to its mistake, Hillsborough had not enrolled appellant in Social Security for either the 2013-2014 or 2014-2015 school years, covering the period from October 1, 2013 to June 30, 2015.

A-1000-24

In May 2021, appellant applied to the New Jersey Division of Pensions and Benefits (Division) to purchase pension credit for her service from September 1, 2012 to August 31, 2015. On June 21, 2021, the Division denied her request because "from July 1, 2012 to June 30, 2015[, she] was not covered by Social Security[, which] is a prerequisite to participate in the [TPAF]." Appellant stated she became aware she was not enrolled in Social Security for the 2013-2014 and 2014-2015 school years in July 2021.

In February 2024, appellant inquired with the Social Security Administration (SSA) about whether she could purchase Social Security credits for her employment with Hillsborough during the 2013-2014 and 2014-2015 school years. The SSA responded there was no mechanism for her to retroactively purchase credits for those years.

In March 2024, the Hillsborough superintendent wrote a letter on behalf of appellant, acknowledging Hillsborough's inadvertent failure to enroll her in the pension system for 2013-2015 and expressing support for her efforts to recover pension credits. In April 2024, appellant appealed from the Division's June 2021 denial of her request to purchase pension credit. The Division upheld its prior decision, reasoning Social Security is a prerequisite to participate in the TPAF pursuant to N.J.A.C. 17:3-2.1(a)(2). "Since Social Security contributions

4

were not remitted while [appellant] was employed . . . for the period covering July 1, 2012 to June 30, 2015, she was not eligible to become a member of [the TPAF ]or . . . permitted to purchase service credit . . . ."

Appellant challenged the Division's decision, arguing it incorrectly interpreted N.J.A.C. 17:3-2.1(a)(2) and failed to consider her particular circumstances. She requested her case be heard before the full TPAF Board. On July 19, 2024, the Board upheld the Division's decision. It found appellant was not in a position "covered by Social Security" as defined by N.J.A.C. 17:3-2.1(a)(2). Under N.J.A.C. 17:3-5.8(a)(6), she was barred from purchasing pension credits because she "was not eligible for either compulsory or optional enrollment in a State-administered retirement system at the time the service was rendered." The Board concluded, "[a]lthough [appellant] held a TPAF-eligible position from October 1, 2013 through June 30, 2015, because Hillsborough did not withhold Social Security deductions during that period, [appellant] is not eligible to receive service credit for, or purchase, that period."

Appellant contested the Board's decision, arguing she was eligible to enroll under N.J.S.A. 18A:66-2, and the Board incorrectly interpreted N.J.A.C. 17:3-2.1(a)(2) and N.J.A.C. 17:3-5.8(a)(6), usurping the statute. She asserted equitable principles recognized in Seago v. Board of Trustees, Teachers' Pension

and Annuity Fund, 257 N.J. 381 (2024), required the Board to grant her request to purchase pension credits.

The Board rejected appellant's challenge. It found "because there is no mechanism for [appellant] to retroactively pay into Social Security for the 2013-2014 and 2014-2015 school years[,] she is not eligible to receive credit for, or purchase, that period."

The Board later issued a written opinion citing the aforementioned regulations, but also N.J.S.A. 43:22-3. Pursuant to the statute, the Board observed "the State entered into a Section 218 agreement with the SSA . . . to extend the Social Security Insurance system to 'services performed by individuals as employees of such State or any political subdivision thereof.' 42 U.S.C. [§] 418(a)(1)." However, Section 218 agreements "shall exclude . . . service . . . which is excluded from employment by any provision of [42 U.S.C. §] 410(a)." 42 U.S.C. § 418(c)(6)(D). Under 42 U.S.C. § 410(a)(19), employment does not include "[s]ervice which is performed by a[n] . . . individual for the period [they are] temporarily present in the United States as a nonimmigrant under" an F-1 visa, 8 U.S.C. § 1101(a)(15)(F). Thus, Section 218 excludes services performed by individuals employed under an F-1 visa.

The Board reasoned because appellant's "employment with Hillsborough from October 1, 2013 through June 30, 2015[,] was through an F-1 visa" it "was not covered by the State's Section 218 Agreement with [the] SSA." As a result, "the position was not covered under Social Security as required by N.J.A.C. 17:3-2.1(a)(2)" and appellant could not purchase pension credits.

The Board also observed H-1B visa holders must pay Social Security taxes. Appellant did not pay into Social Security for the 2013-2014 or 2014-2015 school years and only began paying into the system in September 2015.

I.

Appellant argues the Board's decision centers around the improper interpretation of, and reliance upon, N.J.A.C. 17:3-2.1(a)(2) and N.J.A.C. 17:3-5.8(a)(6). Rather than liberally interpret its regulations, the Board instead used them to limit her statutory right to compensation under N.J.S.A. 18:66-2(d)(1). Appellant claims she met the requirements to purchase the pension credits because H-1B visa holders are subject to Social Security taxes and therefore her employment during the 2013-2014 and 2014-2015 school years was "covered by social security" notwithstanding Hillsborough's error. She argues the "covered by" language in N.J.A.C. 17:3-2.1 does not require contributions to Social

A-1000-24

Security. Rather, "covered by" intends to identify those who should be paying into Social Security.

Appellant asserts the Board's incorrect interpretation of "covered by" in N.J.A.C. 17:3-2.1 is evidenced by the fact it conflicts with N.J.A.C. 17:3-6.1, which refers to members who are "enrolled" in pension systems. She states "'enrolled' means active participation, including contributions[] to the pension system." Therefore, if the drafters of N.J.A.C. 17:3-2.1 wanted to require Social Security contributions, they could have used "enrolled" in the regulation. The fact they did not, and instead used "covered by," signals the drafters intended the position was eligible for enrollment in Social Security.

Appellant further argues there is no conflict between her ability to purchase pension credits and Section 218, since she does not hold the visas the Board's decision asserts are ineligible for Social Security. The federal statute relied upon by the Board, 8 U.S.C. § 1101(a)(15)(F), does not disqualify appellant because she is not considered a temporary resident under an H-1B visa. Therefore, the Board would not be violating Section 218 by permitting appellant to purchase pension credits.

Citing Seago, appellant contends equitable principles require relaxation of the pension rules in her case. Like the appellant in Seago, appellant argues

she asserted her claims in a timely and good faith manner. The reasons for her rejection were due to her employer's mistake, as in <u>Seago</u>. The denial here, like in <u>Seago</u>, was not predicated on a statute, but rather the Board's interpretation of its own regulations. Further, the harm to appellant exceeds any harm to the TPAF because appellant is seeking to purchase her credits, which does not disrupt the fiscal integrity of the TPAF.

Appellant also argues the Board's decision violates legislative policies because it misinterpreted the facts and failed to interpret the pension statutes and regulations liberally and correctly. She maintains the Board's decision was arbitrary, capricious, and unreasonable because it was unsupported by the evidence.

## II.

Appellate review of an agency decision is limited. <u>Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n</u>, 234 N.J. 150, 157 (2018). We will sustain the decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." <u>Ibid.</u> (quoting <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011)). But, in cases involving statutory interpretation or pure legal issues, "a reviewing court is 'in no way bound by [an] agency's interpretation'" thereof. <u>Id.</u> at 158

A-1000-24

(alteration in original) (quoting Dep't of Child. & Fams. v. T.B., 207 N.J. 294, 302 (2011)).

Although we are not bound by an agency's interpretation of law, we accord a degree of deference when the agency interprets a statute or a regulation that falls "within its implementing and enforcing responsibility." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). Our authority to intervene is limited to "those rare circumstances in which an agency action is clearly inconsistent with [the agency's] statutory mission or with other State policy." Futterman v. Bd. of Rev., Dep't of Lab., 421 N.J. Super. 281, 287 (App. Div. 2011) (alteration in original) (quoting In re Authorization to Conduct a Referendum on Withdrawal of N. Haledon Sch. Dist., 181 N.J. 161, 176 (2004)).

"We interpret a regulation in the same manner . . . we would interpret a statute." US Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012). Our analysis begins with the plain language of the regulation in question. See State v. Gelman, 195 N.J. 475, 482 (2008) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language."

DiProspero, 183 N.J. at 492. To discover that intent, we give the words of the regulation their "ordinary and common significance." Lane v. Holderman, 23 N.J. 304, 313 (1957). "Only if the statutory language is susceptible to 'more than one plausible interpretation' do we turn to such extrinsic aids as legislative history for help in deciphering what the Legislature intended." Gelman, 195 N.J. at 482 (quoting DiProspero, 183 N.J. at 492-93).

Another principle animating our review is that "pension statutes are 'remedial in character.'" Seago, 257 N.J. at 391 (quoting Geller v. Dep't of Treasury, 53 N.J. 591, 597 (1969)). Thus, "they are to 'be liberally construed and administered in favor of the persons intended to be benefited thereby.'" Id. at 391-92 (quoting Minsavage v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 240 N.J. 103, 107 (2019)). Therefore, courts are "hesitant to allow '[f]orfeiture of earned pension rights' – 'a drastic penalty' – 'unless that penalty has been clearly mandated by the Legislature.'" Id. at 392 (alteration in original) (quoting Bueno v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 422 N.J. Super. 227, 242 (App. Div. 2011)).

The Board's decision relies, in part, upon regulations, which read as follows:

> (a) Any person appointed by the State, local board of
> education, or charter school to a position listed in the

11

definition of "teacher" found at N.J.S.A. 18A:66-2.p or as a regular, full-time employee in a position that meets the following conditions shall be required to become a member of the [TPAF] effective as of the date of their employment:

. . . .

2. The position is covered by Social Security . . . .

[N.J.A.C. 17:3-2.1(a)(2).]

N.J.A.C. 17:3-5.8(a)(6) states:

(a) A member will not be granted, nor may a member purchase, prior service or membership credit, including, but not limited to, the following situations:

. . . .

6. Any public service that was not eligible for either compulsory or optional enrollment in a State-administered retirement system at the time the service was rendered.

As we recounted, the Board concluded that because appellant was not enrolled in Social Security, she was not covered by Social Security under N.J.A.C. 17:3-2.1(a)(2), and therefore ineligible to purchase pension credits under N.J.A.C. 17:3-5.8(a)(6). Although appellant's argument the drafters of N.J.A.C. 17:3-2.1(a)(2) could have used "enrolled in" rather than "covered by" is persuasive, we decline to second-guess the Board's interpretation of its own

12

regulation because interpreting "covered by" as anything other than "enrolled in" serves no useful purpose either for the SSA or the TPAF.

Indeed, eligible positions require Social Security coverage because Social Security benefits supplement TPAF benefits when the member retires. See N.J. Div. of Pensions and Benefits, Teachers' Pension and Annuity Fund (TPAF) Member Guidebook 34 (Dec. 2025), https://www.nj.gov/treasury/pensions/documents/guidebooks/tpafbook.pdf ("Your pension is not reduced by any Social Security benefits you may receive."). In other words, the extension of Social Security benefits to a qualifying TPAF member has no economic impact on the pension benefit by replacing or offsetting the income received from the TPAF but rather adds to the income a person receives during retirement.

Also, one need look no further than the other provisions in N.J.A.C. 17:3-2.1(a) to understand it predicates the extension of pension benefits on the fulfillment of economic and non-economic criteria. Read together, N.J.A.C. 17:3-2.1(a) states:

> . . . Any person appointed by the State, local board of education, or charter school to a position listed in the definition of "teacher" found at N.J.S.A. 18A:66-2.p or as a regular, full-time employee in a position that meets the following conditions shall be required to become a member of the [TPAF] effective as of the date of their employment:

1.  The position requires a valid certificate issued by the State Board of Examiners, pursuant to N.J.S.A. 18A:6-34 et seq. and N.J.A.C. 6A:9, and the person employed holds this valid certificate;

2.  The position is covered by Social Security; and

3.  Salary requirements and full-time weekly work hours to qualify for enrollment are met, based on the date of eligibility for enrollment:

> i.  If eligibility for enrollment began prior to November 2, 2008, the minimum salary requirement for the position is $500.00 or more within a work year;
>
> ii.  If eligibility for enrollment began between November 2, 2008 and May 21, 2010, the position must meet the minimum salary requirements pursuant to the provisions of N.J.S.A. 18A:66-4.b(3), as provided in (g) below;
>
> iii.  If eligibility for enrollment began after May 21, 2010, regular full-time hours of [thirty-two] hours per week are required for enrollment, pursuant to the provisions of N.J.S.A. 18A:66-4.b(4); or

14

> iv. If a break in a member's service occurs and it has been more than two consecutive years since that member's last pension contribution, reenrollment will occur based on the date of eligibility for enrollment, in accordance with (a)3i, ii, or iii above.

Therefore, a sensible reading of "covered by" in N.J.A.C. 17:3-2.1(a)(2) supports the conclusion its drafters intended the member to benefit from Social Security so as not to leave the entire retirement burden on the TPAF, and instead, have Social Security benefits supplement the pension. N.J.A.C. 17:3-2.1, entitled "Enrollment eligibility," like sub-part (a), sub-parts (b) through (h), clearly evince other economic and non-economic criteria for pension eligibility based on statutory and non-statutory criteria designed to execute legislative intent.

Although the Board correctly interpreted the "covered by" language, we are unconvinced permitting appellant to purchase pension credits for the 2013-2014 and 2014-2015 school years would violate the Section 218 agreement. There is no dispute appellant's H-1B status did not fall into the category of visa holders whose employment is not covered by Social Security. 42 U.S.C. § 410(a)(19). By virtue of having to pay into Social Security, H-1B visa holders

15

are not considered "temporarily present" under 42 U.S.C. § 410(a)(19).  See Taxation of Alien Individuals by Immigration Status – H-1b, IRS, https://www.irs.gov/individuals/taxation-of-alien-individuals-by-immigration-status-h-1b (Sept. 14, 2025).

Pursuant to these principles, we might be convinced the Section 218 agreement was violated if, for example, appellant's visa status was misrepresented to the SSA.  However, Hillsborough's failure to timely enroll appellant into Social Security did not harm the SSA because appellant's Social Security retirement benefits will be based on what she pays into the Social Security system during her working lifetime.  And, the TPAF is not harmed because appellant will be purchasing her credits.

Finally, equitable principles require appellant be permitted to purchase the pension credits.  In Seago, the appellant was a member of the Public Employees Retirement System (PERS) for thirteen years and became employed as a teacher, which required her enrollment in the TPAF.  257 N.J. at 385.  As a result, regulations required she execute an interfund transfer of her PERS account to the TPAF within two years of the date of her last contribution to PERS.  Ibid. Although the appellant executed her portion of the interfund transfer application in a timely manner, "her employer admittedly 'overlooked' her application and

16

failed to timely complete and file it." Ibid. This resulted in the appellant losing her tier membership status, thereby requiring her to work until the age of sixty-five, rather than sixty, and receive a lower monthly pension. Id. at 400.

The Board denied the appellant's transfer application, and we affirmed on appeal. Id. at 385. The Supreme Court reversed and concluded equitable principles could be applied to fashion a remedy in Seago's case where it "'does no harm to the overall pension scheme'" and "where providing an equitable remedy would require the TPAF Board only to relax its own regulation, not a statute duly enacted by the Legislature." Id. at 396 (quoting Sellers v. Bd. of Trs. of Police & Firemen's Ret. Sys., 399 N.J. Super. 51, 62 (App. Div. 2008)). The Court relied on Sellers, which outlined five factors for considering whether to apply equitable principles, namely: "'whether the government failed to "turn square corners"'; whether the pension member 'acted in good faith and reasonably'; the harm a member will suffer; the harm to the pension scheme; and any other relevant factors in the interest of fairness." Seago, 257 N.J. at 396-97 (quoting Sellers, 399 N.J. Super. at 62-63).

The first factor requires the government to act "solely in the public interest [and] . . . comport itself with compunction and integrity." Id. at 397 (quoting F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27 (1985)).

17

The second factor measures the member's good faith and reasonableness by whether they "exercised reasonable diligence" and sought "relief 'for good cause upon reasonable grounds.'" Ibid. (quoting Minsavage, 240 N.J. at 110).

The third consideration compares the "'degree of harm' to the member if relevant statutes or regulations are to be 'strictly enforced,' and the harm to the pension fund" in light of the fact the "pension statutes should be 'administered in favor of the persons intended to be benefited.'" Ibid. (first quoting Sellers, 399 N.J. Super. at 62; and then quoting Minsavage, 240 N.J. at 107). The Court observed interpreting pension statutes and regulations to expand eligibility is an improper consideration. Id. at 397-98. Likewise, under the fourth consideration, a court must consider "the fiscal integrity of the pension funds" before granting a member equitable relief. Id. at 398 (quoting Francois v. Bd. of Trs., Pub. Emps.' Ret. Sys., 415 N.J. Super. 335, 349 (App. Div. 2010)).

In Seago's case, the Court concluded the Board did not turn square corners because it argued the regulation governing the interfund transfer placed the onus on the member to complete the transfer, yet the member guidebook said the application should be submitted by the employer. Ibid. Even though the guidebook stated statutes and regulations took precedence over the guidebook, the Court held "it was unreasonable for the TPAF Board, under Seago's

18                                                      A-1000-24

particular circumstances, not to recognize the hardship that this contradiction caused Seago." Id. at 398-99. Given the Board's "'primary obligation . . . to comport itself with compunction and integrity,' [it] did not reasonably and adequately consider the [employer]'s admitted responsibility and how the [g]uidebook, application, and regulations led to the late filing of Seago's interfund transfer application, through no fault of Seago's." Id. at 399 (omission in original) (citation omitted) (quoting F.M.C. Stores Co., 100 N.J. at 427).

The Court observed Seago acted reasonably and in good faith because she attempted to ensure the interfund transfer prior to the expiration of her PERS account. Ibid. Based on reassurances she received from her employer and the guidebook and application instructions, she reasonably believed it was the employer's responsibility to file the application. Ibid.

The Court concluded Seago would "suffer significant harm" by losing her pension tier because she would have to work five more years and retire with a smaller pension. Id. at 400. Conversely, the record was "devoid of evidence that the fund would face significant harm if Seago's application is treated as timely." Ibid. The Board admitted cases like Seago's were rare and the Court's holding was "a narrow one that applies specifically to Seago's unique circumstances; thus, it will not 'place a greater strain on the financial integrity

19

of the fund.'" Ibid. (quoting Smith v. State, Dep't of Treasury, 390 N.J. Super. 209, 215 (App. Div. 2007)). The Court concluded "the harm to the pension system in granting Seago's application does not appear to be significant as compared to the harm Seago will face if [it] allow[ed] the TPAF Board's decision to stand." Ibid.

Pursuant to these principles, we conclude the unique circumstances of appellant's case warrant equitable relief as well. Although the Board turned square corners in that it did not misguide appellant, the other equitable factors do not weigh in its favor. The Board acted unreasonably when it failed to consider appellant acted in good faith and had nothing to do with Hillsborough's admitted failure to enroll her in Social Security. Although some years passed between when appellant learned about the error and sought to purchase the credits, we are unconvinced the Board would have acted differently if appellant had raised her claims as soon as she discovered the error. The harm to appellant is apparent as she worked two school terms and will not receive the benefit of a credit towards her pension because of Hillsborough's error and the Board's interpretation of the law.

Concomitantly, we lack evidence of a cognizable harm to the TPAF, let alone a harm that outweighs the harm done to appellant. As we noted, we part

ways with the Board's assertion that allowing appellant to purchase the credits either violates the Section 218 agreement, or harms the SSA or the fiscal integrity of the TPAF.

For these reasons, we reverse and remand the November 15, 2024 final agency decision of the Board. We direct the Board to grant appellant's request to purchase credits for her service during the 2013-2014 and 2014-2015 school years.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division